767 F.2d 920
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
ROBERT KIRCHER, PLAINTIFF-APPELLANT,
v.
CONCRETE MASONRY CORP., A DISSOLVED OHIO CORPORATION;
THEODORE L. GOUDVIS, INDIVIDUALLY AND AS TRUSTEE AND AS
FIDUCIARY OF CONCRETE MASONRY CORP. PENSION PLAN AND TRUST;
WILLIAM S. LASCH, INDIVIDUALLY AND AS TRUSTEE AND FIDUCIARY
OF CONCRETE MASONRY CORP. PENSION PLAN AND TRUST; CONCRETE
MASONRY CORP. PENSION PLAN AND TRUST, DEFENDANTS-APPELLEES.
 NO. 83-3891
 United States Court of Appeals, Sixth Circuit.
 6/17/85
 
 N.D.Ohio
 AFFIRMED
 On Appeal From The United States District Court for the Northern District of Ohio
 BEFORE: KEITH and KRUPANSKY, Circuit Judges, and COHN.*
 PER CURIAM:
 
 
 1
 The plaintiff, Robert Kircher, a former employee of the defendant, Concrete Masonry Corporation (CMC), appeals from an order entered by the United States District Court for the Northern District of Ohio granting summary judgment to the defendants. Kircher filed this suit to recover pension benefits which the trustees of the pension plan determined had been forfeited by Kircher under a break-in-service rule provided for in an earlier plan. We affirm the judgment of the district court for the following reasons.
 
 
 2
 Kircher began working for CMC in February 1967. A 1963 pension plan was in effect at that time and provided for twenty percent distribution of the amount in a participant's account for each year of continuous service in excess of five full years. Under the 1963 plan any break-in-service with CMC constituted a forfeiture of benefits accrued under the pension plan. In early February of 1971, Kircher voluntarily left CMC to work at another company. Prior to his departure, CMC notified Kircher that the time he had accumulated toward the vesting of pension benefits would be forfeited once he left CMC's employ. Thus, the 1963 plan with an explicit break-in-service rule was in effect in early February 1971, the date Kircher voluntarily quit CMC. However, a little over a year after voluntarily leaving CMC, Kircher returned to the company as a newly hired employee. The annual statements reporting the status of Kircher's pension benefits from the time of his rehire show that under the plan Kircher's employment was considered to have begun on the date of his rehiring in 1972.
 
 
 3
 During the year of Kircher's break-in-service, CMC issued a 1972 restatement of the 1963 plan which was effective retroactively to November 1971. The 1972 restatement did not explicitly incorporate the continuous service provision of the 1963 plan, but provided for 20% distribution of funds accrued after five years of employment with a 20% increase in vested funds until nine years of employment when 100% of the benefits vested. In November 1977, the pension plan was restated a second time to comply with the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Sec. 1001 et seq. This plan became effective retroactively to November 1, 1976.
 
 
 4
 In May 1977, Kircher's employment was terminated pursuant to CMC's decision to eliminate its pre-cast concrete division. At that time Kircher had worked at CMC for nine years and three months with a one year break in service after four years. In computing Kircher's vested pension benefits, the trustees of CMC's pension fund determined Kircher had worked in excess of the requisite five years but less than six years from the time he was rehired in 1972. The trustees concluded he was therefore entitled to twenty percent of the money accrued since he was rehired in 1972 or $4,250.19. Kircher accepted this amount but later filed this suit for the balance of the money accrued in his account. Kircher alleged that under the 1972 Restatement of the 1963 plan, he was entitled to recover 100% of the money accrued since his return to CMC in 1972. Kircher based this eligibility on the nine years of split employment with CMC arguing that although he was not entitled to the money accrued during his first four years with CMC, the trustees were nonetheless required under ERISA to include those years of service in determining his vestiture during the years since his rehire in 1972. The district court granted summary judgment to the defendants on the ground that the trustees were within their discretion to apply in 1977 the break in service forfeiture rule of the 1963 plan in determining his benefits at termination. See 29 U.S.C. Sec. 1053(b)(1)(F). The court concluded that Kircher had been notified in 1971 that if he left CMC he would lose the time accumulated toward his pension and that the exceptions to ERISA's nonforfeiture provisions under Section 1053(b)(1)(F) allowed the trustees to disregard Kircher's first four years of employment if a pre-ERISA plan in effect at the time of his break-in-service would have so permitted.
 
 
 5
 On appeal Kircher contends that the trustees' failure to include a pre-ERISA break-in-service provision in the 1972 and 1977 restatements precludes the trustees from relying on the 1963 break-in-service rule to exclude the first four years of Kircher's employment from the calculation of his total years of service with CMC. We do not agree. This Court can reverse a denial of benefits only upon a showing by the plaintiff that the trustees of the pension fund acted in an arbitrary and capricious manner. Van Fossan v. International Brotherhood of Teamsters, 649 F.2d, 1243, 1246 (7th Cir. 1981). In our view, the trustees in this case did not arbitrarily or capriciously apply the break-in-service rule provided for in the 1963 plan to determine Kircher's vested interest in the pension plan in 1977 when Kircher's employment was terminated. Although the restatements of 1972 and 1977 fail to expressly provide that a break-in-service in years prior to the effective date of ERISA would be governed by the rule of the 1963 plan in effect at the time of the break, the company notified Kircher prior to his voluntary departure from CMC that if he left he would forfeit the years and money accrued toward vestitute at that point. We, therefore, conclude that in this case the trustees did not arbitrarily or capriciously interpret the plan to Kircher's detriment by 'dig[ging] up [a] break-in-service rule from old and discarded plans in order to deny [Kircher's] pension application' in violation of the express policy of Congress under 29 U.S. Secs. 1001(b), 1104(a)(1). See Snyder v. Titus, 513 F. Supp. 926, 937 (E.D. Vir. 1981). Nor do we conclude that the trustees' determination in this case 'amounts to a retroactive application of a 'break-in-service' rule.' Swackard v. Commission House Drivers Union Local No. 400, 647 F.2d 713 (6th Cir. 1981) (per curiam).
 
 
 6
 Kircher alternatively argues that he is entitled to 100% vestiture under Section 20 of the 1972 and 1977 restatements because CMC partially terminated the trust and because under Internal Revenue Code and Treasury Regulations a company's partial termination gives rise to 100% vestiture to plan participants. We do not conclude that at the time Kircher's employment was terminated CMC had expressly terminated its contribution to the plan as required under Section 20 of either restatement. Nor do we find merit in the plaintiff's application of Treasury Regulations and IRS findings to the analysis required of the termination at hand. The district court did not err in dismissing this argument nor abuse its discretion in denying Kircher's motion to amend the complaint on this issue. See F. R. of Civ. P. 15(a).
 
 
 7
 In conclusion, the district court did not err in granting summary judgment for the defendants under the Section 1053(b)(1)(F) exception to ERISA's non-forfeiture provision where the record establishes that prior to Kircher's voluntary departure from CMC in 1971, he was informed that the benefits and time he had accumulated toward vestiture would be lost upon his departure.
 
 
 8
 Accordingly, the judgment of the Honorable David D. Dowd is hereby affirmed.
 
 
 
 *
 Honorable Avern Cohn, United States District Court for the Eastern District of Michigan, sitting by designation