**Sheldon KATZ, Plaintiff,**

v.

**The COLONIAL LIFE INSURANCE COMPANY OF AMERICA, Defendant.**

**No. 96 CV 638 (BDP).**

United States District Court, S.D. New York.

Jan. 6, 1997.

Bernard Rabin, Rabin & Rabin, Tarrytown, NY, for Plaintiff.

Stanley & Fisher, New York City, for Defendant.

## MEMORANDUM DECISION and ORDER

PARKER, District Judge.

This action arises from the denial of benefits by Colonial Life Insurance Company of America ("Colonial") under a health insurance policy held by Sheldon Katz ("Katz"). Katz brings claims for breach of contract, asserting that Colonial improperly denied benefits under the policy for nursing services provided to Katz' wife, Marcie Katz, and for gross negligence in the drafting of the contract in question.

Before this Court are cross-motions for summary judgment, pursuant to Fed. R.Civ.P. 56. For the reasons set forth, plaintiff's motion is denied and defendant's motion is granted.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment must be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see H.L. Hayden Co. v. Siemens Medical Systems, Inc.,* 879 F.2d 1005, 1011 (2d Cir.1989). It is the burden of the moving party to demonstrate initially the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986); *see also Gallo v. Prudential Residential Servs. Ltd.,* 22 F.3d 1219, 1223 (2d Cir.1994). The burden then shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Affidavits in support or opposition of a summary judgment motion must be made on personal knowledge, setting forth facts which would be admissible at trial by an affiant who is competent to testify to the matters within the affidavit. Fed.R.Civ.P. 56(e). A showing that there is a genuine issue of fact for trial requires a showing sufficient to establish the existence of every element essential to the party's case, and on every element for which the party will bear the burden of proof at trial. In deciding whether there is a genuine issue for trial, "the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought." *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989). Where the nonmovant's evidence is merely conclusory, speculative or not significantly probative, summary judgment should be granted. *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12–15 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

## FACTS

The vast majority of the facts in this case are undisputed. As employee, president and sole stockholder of Shelly Katz Radio Sales Inc., Katz obtained group health coverage for himself, his wife and his child from Colonial, a subsidiary of Chubb Life Insurance of America ("Chubb"), which is a subsidiary of The Chubb Corporation. Coverage under the policy, # 163676–000 ("the policy"), which is an employee benefit plan under ERISA, began on May 1, 1993, with renewal on May 1 of each subsequent year. Under the policy each policyholder is given an individual "Certificate of Coverage" which outlines the specific terms of coverage. The dispute here concerns three provisions of the Certificate of Coverage issued to Katz.

Under the caption "Benefits Payable," the following language is found:

After application of the cash deductible (if it applies), the following benefits are payable:

80% of the first $5,000 of any covered charges for private duty nursing services administered by a registered or practical nurse, plus 100% of any excess over $5,000.

In order to determine what constitutes a "covered charge," Section S of the policy contains the following definition under the heading "Covered Medical Expenses:"

[Covered charges] are the usual and customary charges for services and supplies which are:

a. ordered by a physician;

b. necessary for the treatment of an illness or injury; and

c. incurred while insured.

The policy also contains Rider NY/RN ("the Rider") which states:

The services of a licensed registered nurse are covered under Section S of this policy. All provisions of this policy which relate to coverage of and payment for such services remain in effect, subject to the following:

.     .     .     .     .

3. There is no coverage for services provided in a general hospital, nursing home or facility providing health related services (as those terms are defined in section 2801 of the New York Public Health Law), in a facility defined in subdivision 6 of Section 1.03 of the New York Mental Health Law, or in a physician's office.

Marcie Katz, who is now deceased, was hospitalized on two separate occasions (June 18 to June 23, 1993 and October 14 to November 4, 1994) for lower abdominal cancer

surgery at Mount Sinai Hospital, a "general hospital" for purposes of the Rider. During each of these stays, Mrs. Katz received private nursing care from a registered nurse, the cost of which was $7,050 for the first stay and $15,380 for the second stay.

Katz submitted claims, both of which were denied, to Colonial for the private nursing care his wife received during her hospitalization. Katz was notified on March 27, 1995 that neither claim for registered nursing services would be paid. This determination was confirmed by a April 25, 1995 letter from Chubb, citing lack of "medical necessity" as the ground for this denial. Katz appealed the denial to Chubb's Claims Review Committee, which, by a June 23, 1995 letter, upheld the denial, citing both lack of medical necessity and the Rider. Colonial asserts that it, by a September 1, 1993 letter, notified Katz that it was denying coverage for the private nursing services provided in June 1993. Katz denies having received that letter.

Katz initially commenced this action in New York Supreme Court, County of Westchester on December 28, 1995. The action was removed to this Court on January 29, 1996 on the grounds of federal question jurisdiction under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1001 *et seq.* (1995).

**ERISA PREEMPTION**

■ A threshold issue is whether ERISA preempts New York State contract and tort law in this case. Plaintiff asserts the applicability of New York State law, while defendant contends that ERISA controls. Plaintiff purports to find support for his position in the policy language, "The Group Policy is issued in the State of New York in accordance with its laws. These laws and rules govern in resolving any questions about the Group Policy." Given ERISA's broad and unambiguous preemption provisions, I conclude that defendant's position is correct.

ERISA provides:

Except as provided in subsection (b) of this section, the provision of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a); *see also Smith v. Dunham–Bush, Inc.,* 959 F.2d 6, 8 (2d Cir.1992) (citing *Metropolitan Life v. Taylor,* 481 U.S. 58, 62, 107 S.Ct. 1542, 1545–46, 95 L.Ed.2d 55 (1987)). As the policy is a "employee benefit plan," *see* 28 U.S.C. § 1003(a), and none of the § 1003(b) exemptions apply, plaintiff's state common law contract and tort claims are preempted. *Smith,* 959 F.2d at 8; *see also Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47–57, 107 S.Ct. 1549, 1552–58, 95 L.Ed.2d 39 (1987) (section 1132(a) is exclusive and preempts state law causes of action).

Accordingly, this action will be treated as "a civil action ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the plan, or to clarify his rights to future benefits under the terms of the plan...." 29 U.S.C. § 1132(a).

**STANDARD OF REVIEW UNDER ERISA**

■ As a general proposition, in lawsuits challenging a denial of benefits under § 1132, courts review the denial *de novo. Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 955–56, 103 L.Ed.2d 80 (1989). When discretion to interpret ERISA plan terms is reserved by the plan administrator or fiduciary, however, an "arbitrary and capricious" standard of review is employed. *Id.; Heidgerd v. Olin Corp.,* 906 F.2d 903, 908 (2d Cir.1990). Defendant urges this Court to review the denial under a "arbitrary and capricious" standard and cites examples of discretion given to Colonial under the policy. In applying *Bruch,* the *Heidgerd* Court made clear that minimal grants of discretion are insufficient to trigger review under an arbitrary and capricious standard. *Heidgerd* at 908–909; *O'Neil v. Retirement Plan for Salaried Employees of RKO General, Inc.,* 37 F.3d 55, 59 (2d Cir.1994) ("Where ... plan language categorically states that certain benefits will be provided, *de novo* review is appropriate because unambiguous language leaves no room for the exercise of discretion.").

While the policy may give some minimal discretion to Colonial, the specific provisions at issue in this case are not subject to discretion and, as Colonial itself correctly points out, are unambiguous as to their application. Therefore, the denial of benefits will be reviewed *de novo*.

## REVIEW OF DENIAL OF BENEFITS

In support of his motion for summary judgment, Katz makes a number of arguments in support of his contention that the policy is ambiguous and that the Rider should not be read to modify Section S of the policy. When interpreting insurance plans governed by ERISA, this Court looks to federal common law rules of contract interpretation. *Masella v. Blue Cross & Blue Shield of Connecticut, Inc.*, 936 F.2d 98, 107 (2d Cir.1991); *McNeilly v. Bankers United Life Assurance Co.*, 999 F.2d 1199, 1201 (7th Cir.1993) (citations omitted).

The question of whether a contract is ambiguous is an issue of law. *Schiavone v. Pearce*, 79 F.3d 248, 252 (2d Cir.1996); *Sayers v. Rochester Telephone Corp. Supplemental Management Pension Plan*, 7 F.3d 1091, 1094 (2d Cir.1993). Having reviewed the policy in its entirety, I cannot conclude that the contract language is ambiguous. Contract language is ambiguous if, when considered objectively from the viewpoint of a "reasonably intelligent person" it is subject to more than one meaning. *Sayers*, 7 F.3d at 1095; *see also John Hancock Mutual Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 461 (2d Cir.1994); *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir.1993).

The Rider explicitly bars coverage for private registered nursing services provided at a general hospital. Only by somehow excising the Rider from the contract could one arrive at a contrary interpretation.

Nothing about the text or placement of the Rider would warrant that approach, nor would any recognized canon of contract interpretation.

Plaintiff argues for this approach citing the presentation of the Rider, the failure to list the Rider in the table of contents, the absence of a reference to the Rider under the "Benefits Payable" heading and the fact that the Rider is on the back side of a page of the contract. While listing the Rider in the table of contents or making reference to it under the "Benefits Payable" heading (the provision it modifies) would have highlighted the relationship between the Rider and "Benefits Payable," I do not find defendant's failure to present the contract's provision in another way makes it ambiguous.

The table of contents lists only the titles of the individual sections, with no listing of the provisions contained within each section. Although there is no reference to the Rider under the "Benefits Payable" heading, the Rider refers to the portion of the policy it modifies, and there is no reason to assume that a policyholder would not have read the entire contract. Indeed, use of the term "Rider," which by definition modifies the original, was an appropriate and sufficient indication to the policyholder of the presence of a modification.[1] Finally, I find plaintiff's argument regarding the Rider's location on the back side of a page unpersuasive and somewhat confusing since the policy, in its entirety, was produced in a two-sided format, as a result of which approximately half of the provisions were placed on the reverse side of a page. Additionally, I note that the Rider, the text of which fills approximately one-quarter of a page, is the only provision on page 20, which is inconsistent with plaintiff's contention that defendant somehow attempted to hide the Rider.

Having found the policy unambiguous[2], I grant defendant's motion for summary judg-

---

1. *See Black's Law Dictionary* 1323 (6th ed. 1990) ("Another common example of a rider is an attachment to an insurance policy that modifies the conditions of the policy by expanding or restricting its benefits or excluding certain conditions from coverage. With the use of the rider the entire document does not have to be rewritten or redrafted again.").

2. Accordingly, I do not reach the question of whether the registered nursing services provided to Marcie Katz were "medically necessary," as defined by the policy.

ment on plaintiff's claim for reimbursement for registered nursing care provided in June 1993.[3] While my finding regarding ambiguity applies with equal force to the claim for reimbursement for nursing care provided in October/November 1994, an additional question of estoppel arises with respect to that claim.

## ESTOPPEL

The factual dispute underpinning this issue is whether Katz received a September 1, 1993 letter from Colonial informing him that his claim for private registered nursing care provided to his wife in June 1993 was being denied. Katz asserts that he never received the letter and, therefore, until March 27, 1995, when he received the notice of the denial of coverage, Colonial had led him to believe that his policy covered registered nursing care provided at a general hospital. As the dispute as to whether Katz actually received the letter cannot be resolved at this juncture, I now consider whether, if he did not receive the letter, Colonial should be estopped from denying coverage for the October/November private nursing care.

■ In order to prevail under the doctrine of equitable estoppel, Katz must show (1) a material representation, (2) reasonable reliance upon that representation, and (3) damage resulting from that representation. *Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir. 1993) (recognizing cause of action for equitable estoppel under ERISA).

■ Katz asserts that Colonial's failure to inform him of the denial of coverage was a "material representation," upon which he relied in October and November 1994 when his wife received registered nursing care for the second time. While silence may act as a "representation" for purposes of estoppel, such is only the case when one has a duty to speak or one knows that the other party was acting under a mistaken belief. *See In re Ivan F. Boesky Securities Litigation,* 948 F.2d 1358, 1367 (2d Cir.1991); *U.S. v. Wyn-*

*shaw,* 697 F.2d 85, 87 (2d Cir.), *cert. denied,* 464 U.S. 822, 104 S.Ct. 87, 78 L.Ed.2d 96 (1983) ("representation" may be by language, acts or silence). Katz has not asserted—and certainly has not demonstrated—that Colonial had a duty to speak nor that it knew that he was acting under a mistaken belief.

■ In any event, assuming *arguendo* Colonial did not send the September 1, 1993 letter, it was not reasonable for Katz to interpret Colonial's failure to send such a letter as a conclusion by Colonial that the claims would be paid. First, since the terms of the policy clearly indicated that the claim would not be paid since it was not covered, it was not reasonable for Katz to assume a unilateral amendment to the policy by Colonial. Second, the fact that Katz had received no reimbursement from Colonial between June 1993 and March 1995 could not have engendered the requisite reasonable belief that payment would be forthcoming pursuant to the policy.

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted. The Clerk of the Court is ordered to enter judgment in favor of defendant.

SO ORDERED:

---

**3.** As an alternative to full reimbursement, Plaintiff asks this Court to award him the "prevailing rate for a practical nursing." Plaintiff's theory is that the exclusion of coverage for registered nursing care was ambiguous and, as the exclusion did not apply to practical nursing care, equity dictates that Colonial should be responsible for the cost of practical nursing. As I find the Rider unambiguous and no practical nursing care was actually provided, I reject this alternative theory.