Shane O'NEIL;  Robert J. Johnson, on be-
half of themselves and all those similar-
ly situated, Plaintiffs–Appellants,

v.

RETIREMENT PLAN FOR SALARIED
EMPLOYEES OF RKO GENERAL,
INC. and Certain Subsidiary Companies,
and RKO Bottlers, Inc. Retirement Plan
for Non–Union Employees, Defendants–
Appellees.

No. 93–9038.

United States Court of Appeals,
Second Circuit.

Argued March 21, 1994.

Decided Sept. 26, 1994.

T. Barry Kingham, New York City (Nancy E. Delaney, Curtis, Mallet–Prevost, Colt & Mosle, of counsel), for plaintiffs-appellants.

Charles M. Carberry, New York City (Kenneth R. Puhala, Jones, Day, Reavis & Pogue, of counsel), for defendants-appellees.

Before: OAKES, MESKILL and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Plaintiffs-appellants ("plaintiffs") appeal from a judgment of the United States District Court for the Southern District of New York (Martin, *J.*), dismissing their action following a bench trial. Plaintiffs are a certified class of former executives of RKO General, Inc. and RKO Bottlers, Inc. (collectively, "RKO") who were participants in either the defendant-appellee Retirement Plan for Salaried Employees of RKO General, Inc. and Certain Subsidiary Companies or defendant-appellee RKO Bottlers, Inc. Retirement Plan for Non–Union Employees (collectively, the "RKO Plans").

In 1988, the RKO Retirement and Benefits Committee (the "Committee"), which administered the RKO Plans, decided that certain payments received by plaintiffs under the Stock Incentive Compensation Plan ("SICP"), a plan operated by RKO's parent corporation GenCorp, Inc. ("GenCorp"), were not includible in plaintiffs' pensionable "Earnings" as defined under the RKO Plans. Plaintiffs brought this action challenging the Committee decision pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* to compel the RKO Plans to include in plaintiffs' pensionable "Earnings" the amount of SICP payments received during active employment. The district court denied plaintiffs' motion for summary judgment before trial and, following a bench trial, dismissed plaintiffs' action after conducting a *de novo* review of the Committee decision. Although we agree with its conclusion, we believe that the district court should have accorded more deference to the Committee decision. Because we find that the arbitrary and capricious standard of review is applicable to the Committee decision, and because that decision was not arbitrary or capricious, we affirm the judgment of the district court.

## BACKGROUND

1. *Pensionable "Earnings" Under the RKO Plans*

Pension benefits under the RKO Plans were calculated based on a participant's pensionable "Earnings." The RKO Plans defined such "Earnings" as follows:

"Earnings" means *the regular salary paid to a Participant by the Employer during the calendar year, excluding* severance pay or any special payments associated with termination of employment or retirement and contributions by the Employer

to this or any other benefit plan and any imputed income due to any Employer provided group life insurance benefits, but *including* (A) overtime pay, (B) bonuses, *so-called Incentive or Additional Compensation paid to the Employee during the calendar year,* (C) amounts contributed by the Employer on behalf of a Participant to an employee pension plan pursuant to Section 401(k) of the Code, (D) in the case of Participants regularly employed outside of the United States of America, such Participant's regular salary paid by any subsidiary or affiliated company of RKO, whether or not an Employer, and (E) in the case of Participants regularly employed by the Employer who derive a substantial part or all of their total Earnings from commissions, the total amount of such commissions paid in the calendar year. (emphasis added.

The RKO Plans did not define "so-called Incentive or Additional Compensation," language that was added to the RKO Plans in 1963. The RKO Plans also provided that the Committee had the power "[t]o interpret the Plan, and to resolve ambiguities, inconsistencies and omissions, which findings shall be binding, final and conclusive."

## 2. *Stock Incentive Compensation Plan*

In 1983, GenCorp adopted the SICP, a deferred compensation plan that tied the interests of its participants to the interests of GenCorp's shareholders. The purpose of the SICP was to reward key executives for contributing to the growth and profits of GenCorp. At the discretion of GenCorp's Board of Directors, certain executives of GenCorp and its subsidiaries, including RKO, would receive awards of "units" representing a quantity of GenCorp's publicly-traded stock. The awards had no value when conferred. Instead, their value was based on the difference between the fair market value of GenCorp's stock at the time of the award and when the award vested. As such, an award would have value only if GenCorp stock increased in value prior to vesting.

As originally enacted, the SICP provided for payment at retirement or termination, although participants could elect to receive 50 percent of the value of the award ten years after the date of the award. Vesting occurred within five to ten years after the date of the award. In 1985, the SICP was amended to provide for full vesting over a three year period and to allow participants to receive up to 50 percent of the value of the award three years from the date of the grant.

In 1987, in connection with a recapitalization in response to a hostile takeover attempt, the SICP was again amended to permit participants to elect to receive immediate payment of the value of all vested portions of their SICP awards, including payments of amounts that would have been deferred until after the participant's retirement or termination. The purpose of the 1987 amendment was to allow participants to realize a value consistent with that realized by tendering shareholders.

## 3. *Decision of Committee*

Prior to 1987, SICP payments were not included in "Earnings," although the Committee had never considered the issue. On September 24, 1987, the Committee, which at that point was composed entirely of RKO executives, addressed the issue for the first time and reached a consensus that SICP payments were incentive compensation includible in "Earnings." In reaching this conclusion, the Committee relied in part on advice from its outside ERISA counsel. The Committee, however, did not formally resolve the issue in the context of an actual claim; instead, the Committee decided to discuss the issue with GenCorp, which previously asserted that such payments were not "Earnings."

On November 30, 1987, shortly after the Committee expressed its view to GenCorp, the RKO Board of Directors replaced all of the members of the Committee with GenCorp personnel. According to the minutes of the November 30 meeting, the purpose of the change in Committee composition was to ensure oversight of employee benefits by GenCorp. Subsequently, Robert Johnson and Jeffrey Ruthizer, both RKO employees, formally requested that the Committee authorize the inclusion of SICP payments received during their employment in "Earnings."

The Committee denied Johnson's claim on June 30, 1988, and denied Ruthizer's claim on September 8, 1988. The minutes of the June 30 meeting set forth the factors upon which the Committee relied in making its determination, including the provisions of the RKO Plans and the intent, objective, history, and prior interpretations of the RKO Plans. On September 26, 1988, the Committee formally amended the definition of "Earnings" under the RKO Plans to expressly exclude payments received under the SICP.

### 4. *Procedural History*

In response to the Committee's actions, plaintiffs brought this class action on behalf of SICP participants who could not include SICP payments in "Earnings." Plaintiffs sought a declaratory judgment that SICP payments made during employment were properly considered "Earnings," and an order compelling the RKO Plans to include such payments in "Earnings" and to distribute pension benefits due. Following the completion of pretrial discovery, the district court denied both parties' motions for summary judgment by order of December 15, 1992.

After conducting a four-day bench trial, the district court entered judgment for the RKO Plans on April 6, 1993 and dismissed plaintiffs' action. The district court addressed *de novo* the question of whether SICP payments were "Earnings" under the RKO Plans, and concluded that they were not. Focusing on the term "regular salary" as used in the definition of "Earnings," the district court noted that SICP payments were not at all related to activity of the participants in the year paid, but instead turned on the market fluctuation of GenCorp stock in years after the initial award.

The district court noted that at the very least, the term regular salary was ambiguous. As such, the Committee was vested under the RKO Plans with the authority to interpret the term. The district court found that the Committee exercised this discretion in good faith, and that there was no showing that the decision by the Committee was arbitrary and capricious.

In finding that the Committee acted in good faith, the district court specifically noted that the Committee had not made a formal decision on September 23, 1987 when it first addressed the issue, but simply decided to communicate its consensus to GenCorp. Although recognizing that the communication by the Committee of its consensus to GenCorp may have accelerated the replacement of the Committee members, the district court found that such a change had been under consideration for several years. In addition, the district court recognized that GenCorp was concerned that the former members of the Committee all stood to benefit from an expansive interpretation of "Earnings."

Plaintiffs now appeal.

### DISCUSSION

Plaintiffs make two basic arguments on appeal. First, they argue that the district court erred in denying their motion for summary judgment because the categorical language of the RKO Plans mandated the inclusion of SICP payments in "Earnings." Second, assuming the plan language was ambiguous, plaintiffs contend that the district court erroneously entered judgment for the RKO Plans following the bench trial.

### 1. *Denial of Summary Judgment*

■ Plaintiffs first argue that the district court erred by denying their motion for summary judgment prior to trial because the SICP payments were unambiguously "so-called Incentive or Additional Compensation." According to plaintiffs, the SICP payments were incentive compensation because they were specifically designed to reward key executives for their contributions to the profitability of GenCorp and its subsidiaries. Because no types of incentive compensation were specifically excluded from the definition, plaintiffs maintain the only permissible conclusion the Committee could reach was that the SICP payments were "Earnings."

Summary judgment would have been proper only if the RKO Plans unambiguously included SICP payments as "Earnings." *See Wards Co. v. Stamford Ridgeway Assocs.,* 761 F.2d 117, 120 (2d Cir.1985). Whether

contract language is ambiguous is a question of law that is resolved "by reference to the contract alone." *Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 527 (2d Cir. 1990) (citations omitted). Language "is ambiguous when it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement....'" *Care Travel Co. v. Pan Am. World Airways*, 944 F.2d 983, 988 (2d Cir. 1991) (quotation omitted).

We believe that the district court correctly regarded the plan language as ambiguous. First, "so-called Incentive or Additional Compensation" should be interpreted in light of the core definition of "Earnings," which was regular salary paid to a participant during the calendar year. Because of the deferred vesting and contingent valuation of SICP awards, it is not clear that such payments were regular salary. Second, unlike other terms under "Earnings," the phrase "so-called Incentive or Additional Compensation" was capitalized, implying that it referred to a specific type of payment. As such, the SICP payments did not fall unambiguously within the scope of "Earnings." Therefore, we find that the district court correctly denied plaintiffs' motion for summary judgment.

2. *Challenge to Dismissal of Action*

■ Assuming that the relevant terms in the RKO Plans were ambiguous, plaintiffs next challenge the judgment of the district court upholding the Committee decision. The threshold issue is the appropriate standard of review applicable to the Committee decision. Courts should review a denial of benefits challenged under ERISA *de novo*, unless the plan itself grants the fiduciary discretion to construe the terms of the plan, in which event the court should apply the arbitrary and capricious standard. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). To the extent that a fiduciary operates under a conflict of interest, that conflict should be weighed in determining whether an abuse of discretion occurred. *See id.* Where, however, plan language categorically states that certain benefits will be provided, *de novo* review is appropriate because unambiguous language leaves no room for the exercise of discretion. *See Heidgerd v. Olin Corp.*, 906 F.2d 903, 908–09 (2d Cir. 1990).

■ Although the district court reviewed the decision of the Committee *de novo*, we find the arbitrary and capricious standard more appropriate because the RKO Plans explicitly granted the Committee the authority to interpret the plan terms and because SICP payments were not unambiguously "Earnings." Therefore, on appeal we must simply determine whether the Committee decision was arbitrary and capricious, not, as the district court determined, whether we would reach a different conclusion if considering the issue anew.

a. *June 30 Meeting*

■ In deciding whether the Committee decision was arbitrary and capricious, we must review the factors relied upon by the Committee as articulated in the minutes of its June 30, 1988 meeting. The Committee considered the language, purpose, and history of the RKO Plans, the mechanics of the SICP, and the practical difficulties in interpreting "Earnings" to include SICP payments, including potential tax disqualification. Plaintiffs contend that the Committee acted in an arbitrary and capricious manner by ignoring the plain language of the RKO Plans, disregarding similar payments previously included in "Earnings," misconstruing the nature of SICP payments, and overstating the potential hazards of including SICP payments in "Earnings." We consider each of the factors in turn.

First, the Committee relied on the definition of "Earnings" itself. The Committee noted that the core concept of "Earnings" was regular salary paid during the calendar year. The Committee further noted that each type of compensation specifically included in "Earnings" was "a normal and recurring type of compensation paid for and/or directly related to services rendered during the year or relevant pay period." We believe that the Committee did not abuse its discretion in viewing regular salary as the core

concept of "Earnings" and interpreting "so-called Incentive or Additional Compensation" accordingly.

Second, the Committee considered the intent, history, and prior interpretations of the RKO Plans. The Committee noted that "so-called Incentive or Additional Compensation" was intended to include in "Earnings" annual payments to certain executives that were based on "specific performance criteria and . . . designed to stimulate efforts to achieve specific business objectives during the year." Moreover, the Committee considered the various types of compensation that had not been included in "Earnings," such as payment of educational and moving expenses. In addition, the Committee considered that SICP payments previously had never been included in "Earnings."

We recognize that the Committee may have failed to accord adequate weight to certain irregular payments that previously had been included in "Earnings." For example, under the RKO Equity Appreciation Plan ("EAP"), RKO executives received one-time cash-out payments based on the appreciation in the market value of RKO stock when RKO terminated the program. Such payments were included in "Earnings." The Committee, however, recommended at the June 30 meeting that these payments should not have been considered "Earnings." In addition, prior to June 30, 1988, the Committee never formally addressed the EAP issue. Therefore, although the inclusion of the one-time EAP payments supports plaintiffs' argument, it is not determinative and we must address the other factors relied upon by the Committee.

Third, the Committee considered that the general purpose of the RKO Plans was to replace a certain percentage of an employee's regular annual compensation upon retirement. Inclusion of SICP payments in "Earnings" would not further this purpose because such payments were not regular annual compensation, given that the awards did not vest when conferred and, absent an election by the employee, were paid at retirement or termination. Moreover, the Committee noted that the purpose of 1987 amendments to the SICP following the hostile take-over attempt was not to provide additional compensation for services rendered, but rather to ensure that SICP participants enjoyed the same rights as GenCorp shareholders. We believe the Committee did not abuse its discretion in analyzing the purpose of the RKO Plans, especially in light of the fact that the core concept of "Earnings" was regular salary.

Fourth, the Committee considered the difficulty of determining the annual contributions for funding of the RKO Plans, in light of the fact that the value of the SICP payments turned on the market value of GenCorp common stock. Plaintiffs argue that this concern is a hollow one, given that the Committee was aware that the RKO Plans had relatively fixed liabilities and were substantially overfunded. We agree with plaintiffs that this proffered reason is unpersuasive.

Fifth, the Committee noted that because executives could choose the year in which to receive their SICP payments, those executives could manipulate the amount of their pension benefits. This unfair advantage would result in unearned windfall benefits to certain executives. Plaintiffs argue that this concern was groundless because in 1987, due to the sale of RKO, there would be no further SICP awards that could be manipulated. Although we agree with plaintiffs that the potential for manipulation at the time of the Committee decision was slight, we believe that the ability to so manipulate SICP payments in the past indicates that such payments were not regular salary.

Sixth, the Committee considered the possibility that including SICP payments in "Earnings" could constitute discrimination in favor of highly-compensated individuals, the sole participants in the SICP. As a result, the RKO Plans might have faced disqualification under the Internal Revenue Code. *See* 26 U.S.C. § 401(a)(4). Plaintiffs argue that the Committee completely misunderstood the applicable law: they claim that there was no risk of disqualification due to improper discrimination because 26 U.S.C. § 401(a)(5) provides a safe harbor for plans that include total compensation for all employees, including the highly compensated. The definition

of "Earnings" under the RKO Plans, however, did not include all forms of compensation. Moreover, the district court specifically found that a reasonable person could believe that the RKO Plans might risk disqualification by including SICP payments in "Earnings" and that the Committee relied upon tax advice to that effect in good faith. Therefore, the risk of disqualification, even if not substantial, was real. Accordingly, we find that the Committee did not abuse its discretion in considering the likelihood of disqualification of the RKO Plans.

After a thorough review of the Committee decision and other evidence presented by the parties, we do not believe that the Committee acted in an arbitrary and capricious manner in excluding SICP payments from "Earnings." Nor do we believe that a conflict of interest existed sufficient to warrant a finding of an abuse of discretion under the circumstances. *See Firestone*, 489 U.S. at 115, 109 S.Ct. at 956–57. As both the Committee and the district court noted, "so-called Incentive or Additional Compensation" should be interpreted in light of the central concept of "Earnings," which was regular salary. Because we are persuaded that SICP payments were not in the nature of regular salary, and because of the other reasons relied upon by the Committee, we find no abuse of discretion.

#### b. *Plaintiffs' Other Arguments*

In addition to challenging the factors relied upon by the Committee, plaintiffs raise other arguments in support of their claim that the Committee decision was arbitrary and capricious. First, they argue that any ambiguity in the definition of "Earnings" should have been resolved in their favor under the rule of *contra proferentem*. *See Masella v. Blue Cross & Blue Shield of Conn., Inc.*, 936 F.2d 98, 107 (2d Cir.1991) (noting that when courts conduct *de novo* review of an interpretation under an ERISA insurance plan, ambiguities should be construed against the insurer). The rule is " 'that when one party is responsible for the drafting of an instrument, absent evidence indicating the intention of the parties, any ambiguity will be resolved against the draft-

er.' " *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 539 (9th Cir.) (quotation omitted), *cert. denied*, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990). *See also Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1257–58 (3d Cir.1993).

While we recognize that the rule of *contra proferentem* may be useful in interpreting contracts, we believe that the rule is not controlling here. First, such rules of construction are "principles of last resort, to be invoked when efforts to fathom the parties' intent have proved fruitless." *Record Club of Am., Inc. v. United Artists Records, Inc.*, 890 F.2d 1264, 1271 (2d Cir.1989) (citation omitted). As discussed above, there was sufficient proof regarding the proper interpretation of "Earnings" so that application of the rule of construction was not necessary. Second, we note that *Masella* involved *de novo* review, unlike the instant case. We are less inclined to rely on this principle of construction where, as here, the plan grants the fiduciary discretion to interpret the plan.

Plaintiffs' second argument is that the Committee's decision was contrary to ERISA's mandate that plan fiduciaries act "solely in the interest of the participants and beneficiaries," and for the "exclusive purpose of providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1). Plaintiffs contend that because the RKO Plans' liabilities were limited and the plans were comfortably overfunded, there was no reason to exclude the SICP payments from "Earnings." We disagree.

The fiduciary duty of loyalty imposed by ERISA is designed to ensure that fund assets are held and administered for the sole and exclusive benefit of plan participants. *See Levy v. Local Union Number 810*, 20 F.3d 516, 519 (2d Cir.1994). ERISA does not require, however, that a fiduciary resolve every issue of interpretation in favor of the plan beneficiaries. Indeed, a fiduciary must discharge its duties with respect to a plan in accordance with the documents and instruments governing the plan. *See* 29 U.S.C. § 1104(a)(1)(D). In this case, the Committee decided that, based on the plan documents and extrinsic evidence, SICP payments were not "Earnings." The fact that the SICP

participants would have preferred a contrary result does not render the Committee's action arbitrary and capricious.

■ Lastly, plaintiffs contend that the Internal Revenue Code ("Code") and corresponding Treasury Regulations ("Regulations") mandate inclusion of SICP payments in "Earnings" because the Code and Regulations adopt a broad definition of "compensation." Under Code Section 401(a), a pension plan must fulfill various requirements in order to constitute a qualified plan under ERISA. One of the requirements is that the plan not discriminate in favor of "highly compensated" individuals. *See* 26 U.S.C. § 401(a)(4). Section 414(s) of the Code defines "compensation" by reference to Section 415(c)(3), the Regulations to which define compensation as

> wages, salaries, fees for professional services, and other amounts received ... for personal services actually rendered in the course of employment ... to the extent that the amounts are includible in gross income (including, but not limited to ... compensation for services on the basis of a percentage of profits ....). Treas.Reg. § 1.415–2(d)(2)(i).

Because the RKO Plans were qualified by the Internal Revenue Service, plaintiffs contend that the Committee was required to interpret "Earnings" co-extensively with this definition of "compensation."

Plaintiffs, however, incorrectly assert that qualified plans like the RKO Plans are required to apply the above definition of compensation in all circumstances, including the determination of benefits actually payable. The relevant Regulation clearly states that

> Section 414(s) and this section do not apply unless a provision specifically refers to section 414(s) or this section. For example, even though a definition of compensation permitted under section 414(s) must be used in determining whether the contributions or benefits under a ... plan satisfy a certain applicable provision (such as section 401(a)(4)), except as otherwise specified, *the plan is not required to use a definition of compensation that satisfies section 414(s) in calculating the amount of contributions or benefits actually provided under the plan.* Treas.Reg. § 1.414(s)–1(a)(2).

Therefore, the Committee was not required to adopt the Code's definition of "compensation" in interpreting "Earnings."

Alternatively, plaintiffs argue that even if not directly applicable, the Code and Regulations are entitled to significant weight when interpreting the provisions of an ERISA plan. Plaintiffs argue that the Code and Regulations may apply to ERISA "not only for the purpose of determining a plan's tax status, but also as persuasive authority in determining the rights of an employee to participation in an employee benefit plan." *See Renda v. Adam Meldrum & Anderson Co.,* 806 F.Supp. 1071, 1082 (W.D.N.Y.1992). *See also Weil v. Retirement Plan Admin. Comm. of the Terson Co.,* 913 F.2d 1045, 1049 (2d Cir.1990), *aff'd in part and vacated in part on other grounds,* 933 F.2d 106 (2d Cir.1991); *Dennard v. Richards Group, Inc.,* 681 F.2d 306, 314–15 (5th Cir.1982).

Although we recognize that the Code and Regulations may be useful in determining rights under ERISA in some circumstances, we do not believe that the cases and regulations cited by plaintiffs are controlling here. The decisions on which plaintiffs rely did not involve questions of fact, but rather involved questions of law on which deference to a fiduciary is not warranted. *See, e.g., Weil,* 913 F.2d at 1049 ("the Committee's decision to deny benefits to plaintiffs was unique in that it turned on a question of law"); *Renda,* 806 F.Supp. at 1077 (issue is whether plaintiff is "employee" entitled to benefits under ERISA). Moreover, Treas.Reg. § 1.414(s)–1(a)(2) makes clear that in calculating benefits payable, a plan need not adopt the broad definition of compensation set forth above.

In summary, we find no basis for reversing the judgment of the district court because we do not believe the decision of the Committee was arbitrary or capricious. The majority of the factors relied upon by the Committee are persuasive. Moreover, we are not convinced by any of the additional arguments raised by plaintiffs.

## CONCLUSION

For the reasons stated above, we affirm the judgment of the district court.