Lawrence J. BRUNOLI

v.

FRED BRUNOLI & SONS, INC. PENSION PLAN, Fred Brunoli & Sons, Inc. and Joseph C. Brunoli.

No. 3–94–CV–712 WWE.

United States District Court, D. Connecticut.

June 16, 1997.

Thomas J. Farrell, Cranmore, Fitzgerald & Measey, for plaintiff.

Thomas J. Rechen, Pepe & Hazard, Hartford, CT, for defendant.

### RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiff, Lawrence J. Brunoli, brought this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1101–1461, asserting a claim under § 1132(a)(1)(B) for recovery of early retirement benefits under an employee pension benefit plan (count one) and a claim under § 1109(a) for breach of fiduciary duty (count two). Plaintiff moved, pursuant to Fed. R.Civ.P. 56, for partial summary judgment as to count one of the complaint. Defendants filed a response and simultaneously cross moved for summary judgment on both counts of the complaint. Based on the following, plaintiff's motion and defendants' motion will be denied as to count one and defendants' motion will be granted as to count two.

#### Background

Plaintiff began working with his father in 1949 at what would become Fred Brunoli &

Sons, Inc. (the "Company"). In 1957, plaintiff became a director and 25% shareholder. The remaining shares of the Company were divided in equal 25% allotments to the remaining directors—Fred Brunoli, plaintiff's father, and plaintiff's brothers—Joseph and Modesto F. Brunoli.

On September 28, 1968, the Company created its first company pension plan with Sun Life Assurance Company of Canada (the "Sun Life Plan"). The Sun Life Plan provided for payment of a retirement annuity to vested participants beginning at age 65 in an amount to be determined under the Plan formulas. This Plan did not provide for early retirement benefits. Under Section XII entitled "Employer Withdrawal Allowance," the Company was authorized to remove all assets for retired and terminated employees on deposit with Sun Life Assurance Company and apply them towards payment of future premiums under the policy.

On September 27, 1976, the Company amended and restated the plan to conform with ERISA, substituting a trusteed pension plan (the "Trusteed Plan") for the Sun Life Plan, leaving the latter in "indefinite suspension." Under the Trusteed Plan, all benefits payable to a plan participant would be inclusive of and not in addition to any corresponding benefits payable to the participant under the Sun Life Plan "in the event that any funds are left on deposit with the Sun Life Assurance Company of Canada." The Company was also authorized to remove assets on deposit with the Sun Life Assurance Company and deposit those funds in the Trusteed Plan Trust Fund as the terms of the Sun Life Plan provided. Unlike the Sun Life Plan, the Trusteed Plan provided for early retirement benefits.

On June 27, 1986, the Company amended "in its entirety" the Trusteed Plan by establishing the Fred Brunoli & Sons, Inc. Pension Plan effective October 1, 1984 (the "1984 Plan"). Defendant Joseph C. Brunoli, was at all relevant times, the Trustee of the 1984 Plan and has acted as the plan administrator.

Article 1.11(2) of the 1984 Plan states the following:

Future Service Compensation form [sic] September 28, 1968 to October 1, 1976.

Future Service Compensation means with respect to the Participant's Future Service Benefit his Compensation for each Plan Year commencing October 1, 1976.

Article 5 of the 1984 Plan sets forth the methodology for determining retirement benefits, including early retirement benefits. Relevant to this motion is that normal and early monthly retirement benefits are calculated in part on the participant's "Future Service Benefit," which is a portion of the participant's "Future Service Compensation" for each year of service on or after September 28, 1968 but prior to October 1, 1976 up to $6,000. According to § 5.1(b), a participant could retire early and receive a reduced portion of his accrued benefit due at normal retirement age.

The brothers gradually took over the management and ownership of the Company and made decisions relating to hiring, salaries, and payment of annual bonuses. At fiscal years ending 1985 and 1986, the brothers awarded themselves bonuses each of $100,000 and $125,000, respectively.

Plaintiff decided to retire early and on August 25, 1987 made an election of benefits. He began receiving early retirement benefits in January 1988 in the amount of $498.76 per month. In calculating plaintiff's benefits, defendants included past service prior to September 28, 1968 and his future service from October 1, 1976 through his date of termination. Plaintiff's service from September 28, 1968 through September 30, 1976 was excluded. Also excluded from the determination of plaintiff's early retirement benefits was plaintiff's bonus awards in 1985 and 1986. Defendants claim that defendant Joseph Brunoli, as Administrator, determined that the term "compensation" as used in the 1984 Plan did not include bonus amounts.

There is no dispute that at the time of his election, plaintiff was informed that he would not receive any benefits under the Sun Life Plan until he turned 65. The parties dispute, however, whether plaintiff was aware that the bonus amounts were excluded from his pension calculation.

On or about April 25, 1988, the Company exercised the Employer's Withdrawal Allow-

ance under the Sun Life Plan for retired and terminated employees and deposited $44,293.13 into the 1984 Plan, $25,265.18 of which was allocated to plaintiff. Funds with respect to continuing employees were left on deposit with the Sun Life Assurance Company. On July 14, 1993, in response to an inquiry by plaintiff as to the status of his Sun Life Plan annuity, Sun Life provided plaintiff with information which disclosed for the first time to him that the Company had previously withdrawn the funds allocated for plaintiff's benefit.

On or about August 16, 1993, plaintiff's lawyer directed a letter to defendant Joseph Brunoli requesting information concerning the disposition of plaintiff's benefits under the Sun Life Plan and confirmation that the Company intended to pay Sun Life Benefits to plaintiff at age 65. By letter dated September 29, 1993, defendant Joseph Brunoli responded, explaining that the Plan had exercised the Employee Withdrawal Allowance provision set forth in the Sun Life Plan, that the amount of withdrawal was $44,292.13, and that plaintiff's portion equaled $25,265.18. Administrator Brunoli also confirmed that the Sun Life Benefit claim appeared to be valid and that benefits would be paid at age 65.

On or about October 26, 1993, plaintiff's lawyers directed a second letter to administrator Brunoli. In this letter, plaintiff made a formal claim pursuant to Section 2.12 of the 1984 Plan for immediate payment of monies accrued under the Sun Life Plan. Plaintiff also demanded additional information concerning the administration of the Sun Life, Trusteed and 1984 Plans and the calculation of his pension benefit.

On November 5, 1993, the Company's lawyers responded, denying the claim with respect to plaintiff's demand for immediate payment of Sun Life benefits. The letter also stated that plaintiff's service from September 28, 1968 up to October 1, 1976 was funded through the Sun Life Plan. Plaintiff was also given the information he had requested concerning the calculation of his pension payments.

By letter dated November 24, 1993, plaintiff's counsel made a formal demand for a review of plaintiff's claim pursuant to Section 2.13 of the 1984 Plan, restating his claim for immediate payment of benefits accrued under the Sun Life Plan. Plaintiff also set forth a claim that defendants improperly calculated his early retirement benefits by failing to include his bonus payments for 1985 and 1986. By letter dated December 27, 1993, defendants again denied plaintiff's claim for early retirement benefits under the Sun Life Plan ·as well as plaintiff's claim for benefits based upon the bonus awards. This suit followed.

Plaintiff argues that summary judgment in his favor is appropriate as to count one as a matter of law, because defendants wrongfully excluded retirement benefits accrued under the Sun Life Plan as well as his 1985 and 1986 bonus amounts in ·calculating his early retirement benefits. Defendants claim that summary judgment should be granted in their favor on count one because 1) plaintiff's claims are barred by the applicable statute of limitations; 2) plaintiff failed ·to exhaust his administrative remedies; and 3) Joseph Brunoli's determination, as plan administrator, that plan bonuses awarded in 1985 and 1986 were not compensation for the purposes of the 1984 plan was neither arbitrary or capricious. Defendants claim that summary judgment should be granted on count· two because plaintiff does not have standing to assert a breach of fiduciary claim under § 1109.

#### Discussion

I) *Count One*

A) *Statute of Limitations*

Defendants argue that plaintiff knew in 1987 when he made his election of benefits that he would not receive any of the monies accrued under the Sun Life Plan until he reached age 65. Defendants also argue that plaintiff, as a shareholder in the Company, should have known that the 1985 and 1986 bonus amounts would not be included as "compensation" for purposes of determining retirement benefits. Given this knowledge, defendants aver that plaintiff's claims are barred by Connecticut's two-year statute of limitations governing actions arising out of

the employment relationship. Conn. Gen. Stat. § 52–596.

With respect to ERISA claims that do not allege a breach of fiduciary duty, ERISA is silent as to the applicable limitations period. *Miles v. New York State Teamsters Conference Pension & Retirement Fund Employee Pension Ben. Plan,* 698 F.2d 593, 598 (2d Cir.1983), cert. denied, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983). Under such circumstances, the court must apply the statute of limitations of the state law claim most analogous to the federal claim. *Sandberg v. KPMG Peat Marwick, LLP,* 111 F.3d 331, 333 (2d Cir.1997). Generally, the limitations period for a state law breach of contract claim is applied to claims seeking relief under 29 U.S.C. § 1132. *Miles,* 698 F.2d at 598. In Connecticut, this period is six years. Conn. Gen.Stat. § 52–576.

The limitations period begins to run when there has been a clear repudiation by the plan administrator, made known to the beneficiary. *Miles,* 698 F.2d at 598. "Uniformly, courts recognize that an ERISA cause of action accrues when an application for benefits is denied." *Patterson–Priori v. Unum Life Ins. Co. Of America,* 846 F.Supp. 1102, 1106 (E.D.N.Y.1994).

Here, defendants, by their December 27, 1993 letter, clearly repudiated plaintiff's claim for early retirement benefits under the Sun Life Plan. Although plaintiff received notification in 1987 when he made an election of benefits that the Sun Life monies were not payable until he reached age 65, there is no evidence that plaintiff made an application for those benefits until 1993. Thus, this action was brought well within the six-year limitations period. As to defendants' claim that plaintiff should have known that the 1985 and 1986 bonus amounts were excluded when determining retirement benefits, there is no evidence that plaintiff knew that Joseph Brunoli, as Administrator, would make the discretionary determination that the term "compensation" in the 1984 Plan did not include bonus amounts. Accordingly, defendants' statute of limitations defense must fail.

**B)** *Failure to Exhaust Administrative Remedies*

Defendants argue that plaintiff's claims should be dismissed because plaintiff failed to exhaust the administrative remedies provided for under § 2.13 of the 1984 Plan. As to his claim for benefits under the Sun Life Plan, defendants claim that plaintiff failed to specifically request a hearing; with regard to his claim of exclusion of bonus amounts, he failed to appeal the Company's decision before bringing suit.

ERISA requires that an employee benefit plan must afford a reasonable opportunity for review of a claim of benefits. 29 U.S.C. § 1133. Although ERISA does not contain an exhaustion requirement, the Second Circuit has held that a participant must exhaust any administrative remedies provided for under the plan prior to commencing a civil action unless any attempt for review would be futile. *Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588, 592 (2d Cir.1993). Under the futility doctrine, the court must assess whether taking in the actions of the plaintiff and the plan administrators, it would be fair to require plaintiff to proceed through the administrative channels set forth in the plan. *Ludwig v. NYNEX Service Co.,* 838 F.Supp. 769, 781 (S.D.N.Y. 1993).

Section 2.12 of the 1984 Plan provides that claims may be filed with the Administrator and requires written disposition of a claim within 90 days of its filing. If the claim is denied, the beneficiary, pursuant to § 2.13, may request that the Administrator give further consideration to his claim by filing a request for a hearing.

Plaintiff has satisfied the administrative review requirements with regard to the Sun Life benefits issue. Plaintiff's counsel's November 24, 1993, letter requests a formal review of plaintiff's claim pursuant to § 2.13 of the 1984 Plan, which clearly provides for a hearing. Based upon this request, defendants should have proceeded with a hearing on the claim. Instead, they responded by letter denying plaintiff's claim. While plaintiff's counsel's letter does not specifically state that he was requesting a hearing, his

demand for formal review under the appropriate provision of the Plan is sufficient. To require the use of certain magic words or phrases would elevate form over substance.

■ As to plaintiff's claim for bonus payments, defendants correctly assert that plaintiff's counsel's November 24, 1993 letter was the initial request for this relief. No request for further review was made. Pursuant to § 2.13, however, the Administrator is the reviewing party on appeal. In their memoranda, defendants claim that plaintiff is not entitled to these benefits. To dismiss the case and require plaintiff to appeal this issue to the Administrator, whose position on the merits is well-known, would be futile in this particular case. The court therefore waives the exhaustion requirement and will address the merits of plaintiff's claim. *See Horan v. Kaiser Steel Retirement Plan*, 947 F.2d 1412, 1416 (9th Cir.1991)(court waived exhaustion requirement where brief of plan administrator fully apprised court of its position on the merits of plaintiff's claim).

C) *Review of Denial of Benefits*

■ In reviewing a denial of benefits under § 1132(a)(1)(B), the court must first determine the appropriate standard of review. Generally, a *de novo* standard of review is applicable unless the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). In the event the plan gives the administrator such authority, the court must apply the standard of arbitrary and capricious. *Id.; Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir.1995).

■ Plaintiff claims that a *de novo* standard of review is appropriate because the 1984 Plan does not give the plan administrator any discretion in applying the Plan methodology for calculating early retirement benefits. Defendants respond that an arbitrary and capricious standard is applicable because the Plan language plainly gives the Administrator plenary authority to interpret Plan terms.

Section 2.6 of the 1984 Plan provides that the Administrator has "the power to determine all questions arising in connection with the administration, interpretation, and application of the Plan. Any such determination by the Administrator shall be conclusive and binding upon all persons." This Section also provides that the Administrator may "establish procedures, correct any defect, supply any information, or reconcile any inconsistency in such a manner and to such extent as shall be deemed necessary or advisable to carry out the purpose of the Plan."

Under similar language, courts have found the arbitrary and capricious standard applicable. *See e.g., Zisel v. Prudential Ins. Co. of America,* 845 F.Supp. 949, 951 (E.D.N.Y.1994)(arbitrary and capricious standard of review proper where plan language gave administrator authority to determine all questions and resolve all ambiguities); *Seff v. National Organization of Indus. Trade Unions Ins. Trust Fund,* 781 F.Supp. 1037, 1040 (S.D.N.Y.1992)(arbitrary and capricious review required where plan language gave administrator discretionary power to interpret and construe the provisions of trust agreement). The court finds that the language in the 1984 Plan provides the Administrator with the discretion to interpret the Plan thereby triggering an arbitrary and capricious standard of review.

■ Under the highly deferential standard of arbitrary and capricious, the court may overturn an administrator's decision only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Pagan,* 52 F.3d at 442 (quoting *Abnathya v. Hoffmann–La Roche, Inc.,* 2 F.3d 40, 45 (3d Cir.1993)). However, where the administrator imposes a requirement not called for by the plan's provisions, or interprets the plan in a manner inconsistent with its plain words, or by interpretation renders some provisions of the plan superfluous, the administrator's actions may be arbitrary and capricious. *O'Shea v. First Manhattan Co. Thrift Plan & Trust,* 55 F.3d 109, 112 (2d Cir.1995).

■ The court will first address plaintiff's claim that defendants wrongfully excluded the 1985 and 1986 bonus amounts in

determining plaintiff's early retirement benefits. Section 1.11 of the 1984 Plan defines "compensation" as the "total compensation paid or accrued bye [sic] the Employer for a Fiscal Year. Amounts contributed by the Employer under the within Plan and any fringe benefits shall not be considered as compensation."

 In actions where the interpretation of an agreement is at issue, summary judgment is appropriate only when the contract language is unambiguous. *Sayers v. Rochester Telephone Corp., Supplemental Management Pension Plan,* 7 F.3d 1091, 1094–95 (2d Cir.1993). "Contract language is unambiguous when it has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Care Travel Co. v. Pan American World Airways,* 944 F.2d 983, 988 (2d Cir.1991). If the agreement is subject to more than one reasonable interpretation and extrinsic evidence of the actual intent of the parties exists, then the contract's meaning becomes an issue for the factfinder. *Sayers,* 7 F.3d at 1094–95.

Here, plaintiff claims that since the definition of compensation under the 1984 Plan does not specifically exclude bonus payments, such amounts must be included within that term. Defendants argue that since the definition is silent as to the status of bonuses, those payments are excluded. Reading the entire Plan, the court finds that the term "compensation," as defined in the 1984 Plan, is susceptible to two reasonable interpretations and is thus ambiguous. *See O'Neil v. Retirement Plan for Salaried Employees of RKO General, Inc.,* 37 F.3d 55, 58–9 (2d Cir.1994) (court affirmed the district court's denial of summary judgment based on ambiguity in the Plan as to the definition of "Earnings").

As extrinsic evidence of the intent to include bonuses as compensation, plaintiff submits corporate resolutions authorizing the 1985 and 1986 bonuses as "additional compensation ... representing additional wages" as well as plaintiff's W–2's in which the bonuses were reported as wages. In response, defendants submit the affidavit of defendant Joseph Brunoli which states that, as Administrator, he did not believe that the subject bonuses were compensation within the meaning of the 1984 Plan because they were not a reflection of the brothers' individual performances but rather an equal split of the annual profits. Accordingly, Brunoli treated them like stock dividends. This conflicting evidence clearly creates an issue of fact rendering summary judgment inappropriate as to this claim.

 A second issue is whether defendants' decision not to award plaintiff early retirement benefits from the monies accrued during the years 1968 through 1976 under the Sun Life Plan was arbitrary and capricious. Plaintiff claims that once defendants withdrew the monies accrued to plaintiff under the Sun Life Plan, the 1984 Plan controlled. Plaintiff points to the language in the Trusteed Plan which provides that all benefits payable to a plan participant under the Trusteed Plan would be inclusive of and not in addition to any corresponding benefits payable to the participant under the Sun Life Plan "in the event that any funds are left on deposit with the Sun Life Assurance Company of Canada."

While defendants do not specifically address this issue in their briefs, defendant Joseph Brunoli states in his affidavit that he construed the Sun Life Plan as controlling the payment of any monies that accrued from 1968 to 1976 under this Plan. The affidavit states that deposits made with respect to continuing employees of the Company were left on deposit with the Sun Life Plan.

Under the Trusteed Plan, the removal of assets from the Sun Life Assurance Company was controlled by the terms of the Sun Life Plan. The 1984 Plan, however, amended and restated the Trusteed Plan. The 1984 Plan does not contain the provisions set forth in the Trusteed Plan that the benefits are inclusive of and not in addition to those provided for under the Sun Life Plan or that removal of assets from the Sun Life Plan is controlled by the terms of that Plan. Whether it provides for early retirement benefits

**74**

based on years of service from 1968 through 1976 is still at issue.

Under Article 5, normal and early monthly retirement benefits are calculated in part on the participant's future service compensation for each year of service on or after September 28, 1968 but prior to October 1, 1976. The definition of Future Service Compensation from September 28, 1968 to October 1, 1976, however, is defined as compensation starting October 1, 1976. Additionally, there are currently two copies of the 1984 Plan before the court. In Section 5.1(c) of the copy submitted by plaintiff, there is a handwritten reference to the benefits under the Sun Life Plan with regard to the distribution of normal retirement benefits. The copy submitted by the defendants does not contain this reference.

The court cannot find, nor have defendants offered any evidence, that the Sun Life Plan, per se, is the controlling agreement, given that it was amended by the Trusteed and later by the 1984 Plan. However, based on the ambiguities in the 1984 Plan as to the award of benefits based on the subject years, the court cannot say as a matter of law that administrator Brunoli's decision not to include the Sun Life monies when calculating early retirement benefits was arbitrary and capricious. While a subsequent motion for summary judgment, with additional evidentiary submissions, may resolve these issues, it is inappropriate based on the present record.

### D) *Count Two*

 Defendants claim that plaintiff fails to set forth a cognizable claim for breach of fiduciary duty under 29 U.S.C. § 1109(a). In *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 139–44, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the Supreme Court held that actions for breach of fiduciary duty pursuant to § 1132(a)(2) for violations of § 1109 inure to the benefit of the Plan only, not the individual. In *Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d. Cir.1993), the Second Circuit, in applying the holding in *Russell,* found that the plaintiffs' breach of fiduciary claim was barred because they were seeking damages on their behalf, not on behalf of the Plan.

In this case, plaintiff has asserted a claim for breach of fiduciary duty and seeks individual damages, not Plan relief. Accordingly, summary judgment is appropriate as to Count Two.

### *Conclusion*

For the foregoing reasons, plaintiff's motion for partial summary judgment [# 18] will be DENIED and defendants' motion for summary judgment [# 23] will be DENIED as to count one and GRANTED as to count two.