Raymond O'CONNOR, Plaintiff,

v.

CIVIL SERVICE EMPLOYEES ASSO-
CIATION, INC., LOCAL 1000,
AFSCME, AFL–CIO; and Civil Ser-
vice Employees Association, Inc., Sup-
plemental Retirement Plan, Defen-
dants.

No. 97–CV–1651 LEK/RWS.

United States District Court,
N.D. New York.

Jan. 27, 2000.

Daniel E. Clifton, Lewis, Greenwald
Law Firm, New York, NY, for Raymond
O'Connor.

Timothy Connick Civil Service Employ-
ees Ass'n, Inc., Albany, NY, for Civil Ser-
vice Employees Ass'n, Inc., Local 1000,
AFSCME, AFL–CIO, Civil Service Em-
ployees Ass'n, Inc., Supplemental Retire-
ment Plan.

### MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

Pursuant to the Employee Retirement
Income Security Act ("ERISA"), 29 U.S.C.
§ 1132, Plaintiff, formerly a vice president
in defendant Civil Service Employees As-
sociation, Inc., Local 1000 (the "CSEA"),
seeks supplemental retirement benefits
from an unfunded deferred compensation
plan for former union officers. Defen-
dants denied the benefits on the grounds
that Plaintiff had forfeited his rights by
engaging in conduct inimical to the CSEA
after leaving office. Both Plaintiff and
Defendants have moved for summary
judgment. For the reasons set forth be-

low, Plaintiff's motion is granted in all respects and Defendants' motion denied.

## I. BACKGROUND

Plaintiff served as vice president of the CSEA from February 1981 until July 1984. During his term of office, CSEA established the CSEA Supplemental Retirement Plan (the "Plan"), an unfunded deferred compensation plan for its officers.

The Plan defined a "participant" as an "Officer or former Officer who has, on or after the Effective Date, met the requirements of eligibility and who has been designated by the Employer to Participate in this Plan." No one disputes Plaintiff's eligibility: the Plan's definition of "Officer" expressly includes the position of vice president. Under the schedule of benefits, based upon Plaintiff's length of service as a CSEA officer, he was eligible for a benefit payment of $52.75 per month for 180 months (fifteen years).

In § 5.4, the Plan provides for two events that could result in benefit forfeiture:

(i) The Officer shall engage in any activity or conduct which in the opinion of the Employer is inimical to the best interests of the Employer.

(ii) Until his benefit payment have been completed, an Officer shall not directly or indirectly become or serve as an officer or employee of any other employee association, which in the judgment of the Employer competes in a material manner with the Employer, unless the Officer shall have obtained the prior written consent of the Employer.

"Employer" is defined as the CSEA.

From November 1989 until January 1990, Westchester County employees were involved in campaigns for union representation elections. Prior to that time, the county's approximately 6,500 employees had been in the CSEA bargaining unit and paid annual union dues of $750,000—$1,000,000. During that campaign, Plaintiff actively supported a competing labor organization and lobbied on its behalf. As a result of these activities, the CSEA Judicial Board expelled Plaintiff from the union. These events occurred five years after Plaintiff's tenure as a CSEA officer.

In March 1995, Plaintiff applied for a benefit under the Plan. He then retired in April from his position as a probation officer in Westchester County, but was notified by CSEA Director of Internal Operations David Stack that his application had been denied.

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983). A genuine issue is an issue that, if resolved in favor of the non-moving party, would permit a jury to return a verdict for that party. *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir.1997) (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

When the moving party has met the burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material

facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56; *Liberty Lobby Inc.,* 477 U.S. at 250, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.,* 477 U.S. at 248–249, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. Thus, summary judgment is proper where there is "little or no evidence … in support of the non-moving party's case." *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–1224 (2d Cir.1994) (citations omitted).

## B. Denial of Benefits

The pending motions turn on the legal authority of the CSEA president to deny Plaintiff's application for Plan benefits, and the interpretation of the Plan's terms for benefit fortfeiture, all of which involve purely legal issues. The parties do not dispute the material facts of the case, and summary judgment is therefore appropriate.

### 1. Standard of Review

As a threshold matter, the Court must determine the appropriate standard of review that governs its review of Defendants' denial of Plaintiff's benefit application. Although it is a "comprehensive and reticulated statute," *Nachman Corp. v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 361, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980), ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility determinations. Rather, the applicable standard depends on whether the official or entity denying the benefit application-here, CSEA president Daniel Donahue-had the requisite discretionary authority to interpret the benefit plan and determine eli-

gibility. If so, then Defendants would be entitled to an arbitrary and capricious standard of review. If not, then this Court would engage in less deferential de novo review of the denial. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) (holding that arbitrary and capricious standard applies to review of denial of ERISA benefits where benefit plan gives plan administrator or fiduciary discretionary authority to construe plan's terms or to determine eligibility for benefits); *Sharkey v. Ultramar Energy Ltd.,* 70 F.3d 226, 229 (2d Cir.1995) (holding that "[w]here an unauthorized party makes the determination, a denial of plan benefits is reviewed under the de novo standard").

The Plan itself authorizes only the participant's "Employer" to interpret the Plan and issue denials. *See* Plan, § 7.3. But "Employer" is ambiguously defined as the CSEA. *See id.,* at § 1.1. The constitution governing the union delineate the parameters of various offices, including those of the president and board of directors, which Plaintiff claims was the only fiduciary capable of making an eligibility determination. Unfortunately, the CSEA constitution never expressly vests authority for the Plan's administration or interpretation in anyone. Rather, a custom had developed whereby the president alone made eligibility determinations.

Defendants bears the burden of proving that the arbitrary and capricious standard of review applies, since "the party claiming deferential review should prove the predicate that justifies it." *Sharkey,* 70 F.3d at 230. In cases where the Second Circuit has applied the more deferential arbitrary and capricious standard, it has required that the policy language reserving discretion be clear and unambiguous. *See Kinstler v. First Reliance Standard Life Ins. Co.,* 181 F.3d 243, 251 (2d Cir.1999) (citing *Ganton Techs., Inc. v. National Indus. Group Pension Plan,* 76 F.3d 462, 466 (2d Cir.1996) (explicit provision in the policy which provided that the trustees had au-

thority to "resolve all disputes and ambiguities relating to the interpretation of the Plan, and the application of the terms of the Plan to any circumstances and the decisions of the Board in all such matters will be final"); *Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 48 (2d Cir.1996) (policy provided that plaintiff was entitled to benefits if the plan administrators "determined that such ... care was essential, in our judgment, for the treatment of [plaintiff's] [i]njury or sickness"); *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir.1995) (plan provided that "the ... Committee shall determine conclusively for all parties all questions arising in the administration of the [Pension] Plan and any decision of such Committee shall not be subject to further review"); *cf. Masella v. Blue Cross & Blue Shield of Connecticut, Inc.*, 936 F.2d 98, 103 (2d Cir.1991) (applying de novo standard of review where provision stated that the plan is "subject to the terms and conditions of a basic medical/surgical program which is acceptable to the Corporation, in its sole discretion")).

Both parties concede that there is no express delegation of decision-making authority to the president. Defendants rely on the fact that the president has always made such determinations in the past and that a full consideration by the entire board, which numbers over 100, would be too cumbersome, especially in light of the infrequency of its meetings. While it may be true that the CSEA president is responsible for the everyday administration of the union, the Second Circuit has clearly articulated the need for benefit plans to expressly delegate discretionary decision-making authority to an individual. Indeed, every case that Defendants cite in support of their motion confirm that requirement. *See, Brunoli v. Fred Brunoli & Sons, Inc. Pension Plan, et al.*, 993 F.Supp. 66, 72

(D.Conn.1997) (plan explicitly vested administrator with power to determine "all questions arising in connection with the administration, interpretation, and application of the Plan"); *Zisel v. Prudential Insurance Co.*, 845 F.Supp. 949, 951 (E.D.N.Y.1994) (agreement stated: "The Plan Administrator has the authority to determine all questions arising under the provisions of the Plan, including the power to determine the rights and eligibility of participants"); *Seff v. Nat'l Organization of Industrial Trade Unions Insurance Fund*, 781 F.Supp. 1037, 1041 (S.D.N.Y. 1992) (agreement expressly provided trustees with "full authority to determine eligibility requirements for benefits" and "discretionary power over eligibility," as well as "discretionary authority to interpret, apply, and construe the provisions of the Trust Agreement").

■ Defendants cannot point to any such statements in the Plan, and the Court concludes that Defendants have not met their burden. Under the Plan, only the CSEA, acting through its board, not its president, could properly deny Plaintiff's application. Accordingly, this Court must undertake a de novo review of the benefit denial.[1]

### 2. When is an officer an Officer?

As previously explained, § 5.4 provides for two separate events that could result in loss of benefit eligibility. Because Plaintiff never became an officer or employee of any other union, § 5.4(ii) is inapplicable and the only source for the denial is § 5.4(i), which permits forfeiture of a benefit when an "Officer shall engage in any activity or conduct which in the opinion of the Employer is inimical to the best interests of the Employer." Defendants maintain that Plaintiff's support of a CSEA rival in the Westchester County represen-

---

**1.** The Court notes Defendants' justifiable concern over requiring the entire board of directors of the CSEA to resolve issues of benefit eligibility, and observes that the current ambiguity in the Plan could easily be eliminated by an amendment authorizing a fiduciary to make such determinations in the future. Defendants would be well-advised to read the cases they cited in their briefs for guidance in crafting such a provision.

tation elections justified denial under this subsection. Plaintiff argues that any anti-CSEA activity took place more than five years after his term as vice president had expired, and § 5.4(i) only covers activity that occurs during a term of office. Defendants maintain that the provision reaches former officers and covers the entire period in which they are receiving benefits. Under Defendants' theory, Plaintiff could not engage in any anti-CSEA activity for the full fifteen years during which he receives Plan benefits.

When reviewing benefit eligibility determinations de novo, a court must apply traditional principles of contract interpretation and assign each contract term its plain and ordinary meaning. *See Firestone*, 489 U.S. at 112–113, 109 S.Ct. 948. A "Participant" entitled to benefits under the plan is defined as an "Officer or former Officer who has, on or after the Effective Date, met the requirements of eligibility and who has been designated by the Employer to Participate in this Plan." Plan, Art. I., § 1.3. An "Officer" is defined as "the President, Executive Vice President, Six (6) Vice Presidents, Secretary and Treasurer of the Employer." *Id.*, at § 1.2. "Officer" is thus limited to active, serving officials while "Participant" draws no distinction between current and former officers.

Defendants' interpretation of "Officer" as encompassing former officers stems from its reliance on the phrase in § 5.4(ii) permitting forfeiture "[u]ntil his benefit payments have been completed" if a CSEA officer becomes an officer or employee of another union. This provision contemplates that the forfeiture triggering event could occur after retirement, and therefore after an individual ceases to be a union officer despite the fact that the provision uses the word "Officer." Defendants assert that this indicates "Officer" applies to former officers. Defendants err.

It is uncontroverted that Plaintiff never served as an employee or officer of another union. The provision at issue here is § 5.4(i), not (ii). The inclusion of the phrase "[until] his benefit payments have been completed" in § 5.4(ii) merely extends the coverage of that provision beyond the term of office, and the Court agrees with Plaintiff that the phrase would be unnecessary if "Officer" was inclusive of that period. If § 5.4(i) had the same scope, then the same language should have been employed, or the word "Participant," which, throughout other sections of the Plan, clearly applies to former and current officers. *See* Plan, §§ 2.3, 2.6, 5.3, and 6.1(a).

Defendants counter that if Plaintiff's construction of § 5.4(ii) is correct, then the word "Participant" rather than "Officer" would have been used to extend that subsection beyond a term of office. But all "Participants" are not "Officers," as Defendants themselves point out, and § 5.4's forfeiture penalties at issue here only cover officers. The clause "[until] his benefit payments have been completed" was necessary to limit § 5.4(ii)'s coverage to "Officers" and not reach non-officers, as would have been the case by using "Participants." In any event, if § 5.4(i) had the same scope as § 5.4(ii), then it should have used the same language.

Defendants introduce statements by Donahue and Stack as evidence that the drafters of § 5.4(i) intended it to cover former officers. There is no ambiguity, however, requiring introduction of such extrinsic evidence. *See Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir.1992). Plaintiff never engaged in any conduct "inimical to the best interests of the [CSEA]" while an officer of the union. The plain meaning of the Plan's terms is clear.

Based on a de novo review of the record, the denial of Plaintiff's benefits was therefore improper and he is entitled to those benefits forthwith.

### III. CONCLUSION

Accordingly, it is hereby

ORDERED that Plaintiff's motion for summary judgment is GRANTED in all respects and Defendants' motion for summary judgment DENIED;

ORDERED that the case be DISMISSED in its ENTIRETY; and it is

FURTHER ORDERED that the Clerk of the Court serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.