Handee T. LEE, Plaintiff-Appellee,

v.

Robert NESBITT et al., Defendants-Appellants.

No. 25973.

United States Court of Appeals, Ninth Circuit.

June 11, 1971.

As Modified on Denial of Rehearing Feb. 7, 1972.

---

Michael A. Cardozo (argued), Edward Silver, of Proskauer, Rose, Goetz & Mendelsohn, New York City, Fredric C. Tausend, David G. Knibb, of Schweppe, Doolittle, Krug & Tausend, Seattle, Wash., for defendants-appellants.

Clinton F. Raymond, Jr. (argued), Dexter A. Washburn, of Jones, Grey, Bayley & Olsen, Paul J. Fisher, Seattle, Wash., for plaintiff-appellee.

Before KOELSCH, CARTER and WRIGHT, Circuit Judges.

KOELSCH, Circuit Judge:

Lee commenced this action in the District Court against the Trustees of the National Maritime Union Pension Trust, seeking a judgment declaring invalid one of the rules prescribing eligibility requirements for a retirement pension, specifically the "break-in-employment" rule (hereinafter "the rule"), and further declaring him to be entitled to a pension. Federal jurisdiction was based on the diversity of citizenship of the parties. Dersch v. United Mine Workers of America Welfare and Retirement Fund, 309 F.Supp. 395 (S.D.Ind.1969). Both parties made motions for summary judgment, the Court granted Lee's and this appeal followed.

The National Maritime Union Pension Trust (hereinafter "the Trust") was established by the National Maritime Union in 1953, pursuant to § 302(c) (5) of the Taft-Hartley Act (29 U.S.C. § 186(c) (5) (1964) ), to provide pensions for the benefit of unlicensed seamen members. As required by that section, the Trust is administered by an equal number of employer and employee representatives, as trustees, for the benefit of those seamen whose employers contribute to the Trust fund. Under the Trust provisions, the trustees are vested

with discretion to establish requirements governing eligibility for benefits and to determine questions of eligibility.

In 1967, when Lee applied for a pension, a seaman, to be eligible, was required to be at least 60 years of age and to have worked a minimum of 15 years in covered employment—defined as employment with a contributing employer. However, the rule, in effect, added a further requirement concerning continuity of employment; it provided: "If a person does not work in Covered Employment for at least 200 days in any period of three consecutive calendar years after January 1, 1953, it shall constitute a break in employment and his previous pension credits shall be cancelled."[1] The trustees denied the application on the ground that Lee had suffered a break in employment in the period 1955–1957; they also declared he had forfeited all his credits prior to 1957.[2]

In the district court Lee conceded that he had not worked 200 days during the period 1955–57 and indeed his affidavits showed that he had worked 81 days in 1955 and 106 days in 1957, but not at all in 1956. Thus during the period he had worked a total of only 187 days or 13 short of the required 200. However, he excused the deficiency by the further assertion that no employment was available in 1956 and that the break was involuntary. He took the position that the rule was unreasonable on its face because of the absence of a proviso staying its operation whenever employment was unavailable; in the alternative he urged that the trustees acted arbitrarily when they refused to imply such a proviso and denied him a pension. The district court held the rule to be reasonable, but the trustees' interpretation of it to be arbitrary.

■ Section 302 requires that a pension trust be "for the sole and exclusive benefit of employees." The trustees of such a trust, while possessing a large measure of discretion in prescribing conditions of eligibility for benefits, owe a fiduciary duty to the employees and may neither impose unreasonable conditions of eligibility nor act arbitrarily in determining who is eligible. Roark v. Lewis, 130 U.S.App.D.C. 360, 401 F.2d 425 (1968), adhered to sub nom. Roark v. Boyle, 439 F.2d 497.

(D.C.Cir. 1970). Lee does not question the reasonableness of the rule so far as it eliminates from pension coverage those seamen-employees who voluntarily choose not to maintain a continuity of employment. But he contends that the rule is unreasonable on its face because it also operates whenever a break is involuntary. This contention is too far reaching. Since the trust is solely funded by employers' contributions, the amounts of which are determined by the number of days an employee works in covered employment, denial of benefits can reasonably be rested upon an insufficiency of years of employment regardless of the reason. Thus, even if an employee, through no fault of his own, is prevented from completing a minimum period of employment, he may be denied a pension. Stasukonis v. Kennedy, 387 Pa. 216, 127 A.2d 678 (1956).

■ However, that is not this case. As indicated earlier—in footnote 2—by 1955, Lee had earned and was entitled to at least 15 years credits, having worked prior to that time without interruption. He was thus eligible for a pension

---

1. The rule has since been changed to require at least 300 days of employment during three year periods.

2. Although the pension plan did not go into effect until 1953, the regulations provided for "past service credits" extending back to the year 1937; under this regulation Lee was eligible for, and was given, 16¼ years pension credits for service on the basis of employment as a seaman during the prior period. In all, he had credit for 17½ years covered employment before 1955, but on the latter date he was of course ineligible for a pension because of lack of age; although he worked continually after 1957 and until applying for a pension, he had accumulated only 8¼ years of new credits before reaching the age of 65.

on that date, save for the fact that he had not reached the age of retirement.

However, the effect of the rule as written was to impose upon him the requirement that he continue to work to retirement age, even though no work was available; if he did not, then he would never enjoy a pension. We think that the rule, to the extent that it prohibits benefits to an employee solely because of an involuntary interruption in employment after the completion of his minimum employment requirement and before reaching retirement age, is unreasonable on its face.

Our consideration of the matter cannot end here, however, for the trustees have advanced arguments which they assert justify the rule. In particular, they argue that the purposes of the trust compel this seeming unfairness. Pointing out that the American Merchant Marine is an industry of fluctuating but declining employment opportunities, the trustees argue, in effect, that the rule is calculated to induce competent employees to remain in the industry; to that end, pension benefits are limited to those who can always keep their jobs. We agree that these purposes justify the operation of the rule when an involuntary break in employment occurs before the employee has accumulated credit for 15 years of employment, but again, that is not this case. The employee who, prior to an involuntary interruption in his employment with contributing employers, has worked in the industry for 15 years, has surely demonstrated his work ability. Merely because he is unable to obtain employment due to the temporary unavailability of jobs does not establish that his services are no longer available to or needed in the industry. The operation of the rule in cases such as this one tends to thwart the trustees' stated purposes and, in fact, offers qualified seamen no incentive to stay in the industry.[3]

In sum, we conclude that the rule is unreasonable and hence invalid to the extent that it requires forfeiture of employment credits in the case of an employee who has accumulated the minimum number of credits to entitle him to a pension and then, due to unavailability of covered employment, suffers a break in employment during the interval remaining before his retirement.[4]

 As to Lee, however, there remain issues of fact to be resolved before a judgment can be rendered. The district court, on the basis of Lee's affidavit that he was unable to secure any covered employment in 1956, concluded that Lee was prevented from working at least 200 days during the whole period 1955–1957. Obviously this conclusion is erroneous.[5] We must therefore return the matter to the district court where the issue can be resolved. On Lee will rest the burden of proof.

The judgment is vacated and the matter is remanded to the district court for further proceedings consistent with this opinion.

3. Contrary to appellants' assertion, § 302 trust agreements generally differentiate between voluntary and involuntary breaks in employment insofar as the effects on accumulated credits for prior services are concerned. When the break is due to lack of jobs, credits are preserved; but they are lost when the employee quits. Multi-employer Pension Plans Under Collective Bargaining, Dept. of Labor, Lab. Bulletin No. 1362, p. 69 (1960). See Zining v. Retirement Fund of Fur Mfg. Industry, 42 Lab.Cas. 17012 (N.Y.S.Ct. 1961).

4. Having so concluded it is unnecessary to determine whether the trustees' actions were or were not arbitrary.

5. Fed.Rules Civ.Proc., Rule 56(d) provides that the district court on motion for summary judgment may by order declare settled specific facts that "appear without substantial controversy." However, the record here does not indicate a lack of controversy with respect to work availability in any of the three years, nor does the court's opinion reveal an intention to make such a determination.