**Milton VAN FOSSAN, Plaintiff-Appellee,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS UNION LOCAL NO. 710 PENSION FUND, Defendant-Appellant.**

No. 80–1203.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 7, 1980.

Decided June 5, 1981.

Marvin Gittler, Chicago, Ill., for defendant-appellant.

William K. Cavanagh, Springfield, Ill., for plaintiff-appellee.

Before CUMMINGS and WOOD, Circuit Judges, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

The Appellant, Teamsters Pension Fund (hereinafter the Fund or the Trustees of the Fund), appeals from the entry of summary judgment in favor of plaintiff, Milton Van Fossan, on the issue of entitlement to pension benefits. We conclude that summary judgment was erroneously entered and reverse and remand for further proceedings.

Plaintiff Van Fossan was born on August 26, 1917. He worked as an over the road truck driver from August 1950 through October 21, 1972, except for a brief break in service during 1955. In October of 1972, Van Fossan stopped working, apparently due to pain in his shoulder. Van Fossan never returned to work.

During the period during which he worked as a driver, plaintiff was covered under the Teamsters Local No. 710 Pension Plan, and contributions were made to the Fund for him by his employers. When he left employment on October 21, 1972, Van Fossan had 20.5 years of credited service. He was not eligible for retirement benefits at that time, however, because he was only 55 years of age. The plan provided that in order to be eligible for benefits an employee must:

(a) attain the age of fifty-seven;

(b) have twenty or more years of credited service; and

(c) have five or more years of service under a collective bargaining agreement.[1]

The plan provides that the "Normal Retirement Age shall be fifty-seven (57)," and that retirement "shall be voluntary."[2] The monthly payments are set at $450 "for retirement on or after age fifty-seven and before the age of sixty."[3] Those retiring "on or after attainment of age sixty" are entitled to a pension of $550 per month.[4] The plan also provides for graduated disability benefits of up to $250 per month.[5] Contributions to the Fund are made entirely by the employer.

The plan also contains a "break in service" provision, and a "no vesting" provision. The break in service provision states:

After the Effective Date [May 1, 1967] an employee will lose all his prior Credited Service in the event he is not employed in Covered Employment for a consecutive period of One Hundred Fifty-six (156) weeks . . .[6]

The provision regarding no vested interests states:

No employee or other person shall have any vested interest or right in the Trust Fund or in any payments from the Trust Fund.[7]

---

* The Honorable William J. Campbell, Senior United States District Judge for the Northern District of Illinois, is sitting by designation.

1. Article III, Section 1, International Brotherhood of Teamsters Union Local No. 710 Pension Fund Pension Plan.

2. Article III, Section 3, International Brotherhood of Teamsters Union Local No. 710 Pension Fund Pension Plan.

3. Article III, Section 2(h)(1), International Brotherhood of Teamsters Union Local No. 710 Pension Fund Pension Plan.

4. Article III, Section 2(h)(2), International Brotherhood of Teamsters Union Local No. 710 Pension Fund Pension Plan.

5. Article III, Section 4, International Brotherhood of Teamsters Union Local No. 710 Pension Fund Pension Plan.

6. Article III, Section 13, International Brotherhood of Teamsters Union Local No. 710 Pension Fund Pension Plan. The section goes on to exclude breaks for military service and periods during which the employee is receiving a pension.

7. Article VII, Section 1, International Brotherhood of Teamsters Union Local No. 710 Pension Fund Pension Plan.

When he left active employment in October of 1972, plaintiff did not apply for any pension benefits, though early retirement was provided for in the plan. Having accumulated 20.5 years of active service and attaining the age of 55, he would have been eligible for a pension of $200 per month for the first five years of retirement, and $90 per month thereafter.[8] He did not apply for early retirement apparently out of a desire to return to work at some point in the future. On August 26, 1974, plaintiff attained the age of 57. Defendants appear to concede that had he applied for a pension at that time he would have been entitled to a monthly payment of $450.[9] Plaintiff did not, however, apply for pension benefits at that time.

Plaintiff turned sixty on August 26, 1977. Five days later he applied for retirement benefits under the plan. The Trustees denied his application because plaintiff had not been employed in Covered Employment for a consecutive 156 week period. This break in service resulted in the forfeiture of plaintiff's credited time, and he therefore lacked the required years of credited service. Under the Trustees' theory, any rights plaintiff may have had to a pension were lost on October 21, 1975, when he sustained a 156 week break in service. On September 26, 1978 plaintiff filed a complaint in United States District Court for the Central District of Illinois alleging that once he became eligible for a pension at age fifty-seven he did not forfeit his credited service by failing to apply for benefits until August 31, 1977. At no point did plaintiff's complaint claim that the Trustees' action was arbitrary and capricious.

Plaintiff sought benefits solely under the normal retirement provisions of the plan, and did not make any claim of disability.

The facts were not considered to be in dispute, and both parties filed motions for summary judgment. Defendants argued that the break in service provision was clear and unambiguous, and that such provisions are an essential feature of an actuarially sound pension plan. Defendant also relied on the no vesting provision of the plan to counter the claim that the right to benefits had vested upon plaintiff's attaining the age of fifty-seven. Plaintiff argued that the Trustees' interpretation of these provisions was arbitrary and capricious. While jurisdiction was predicated on Section 502(f) of ERISA, 29 U.S.C. § 1132(F), plaintiff did not rely on the minimum vesting standards of ERISA, 29 U.S.C. § 1053. The Trustees "noted" that the vesting provisions of ERISA did not apply, citing generally 29 U.S.C. § 1061 relating to the Act's effective dates.[10]

The District Court referred the motions to the United States Magistrate for review and recommendation. The Magistrate found the application of the break in service rule to be arbitrary and capricious, and interpreted the no vesting provision as applicable only to those employees who had not met the age and service requirements. Accordingly, the Magistrate recommended the entry of summary judgment for the plaintiff. The District Court also found the Trustees' action to be arbitrary and held that plaintiff was eligible for pension benefits. The Court found "that plaintiff retired at age sixty and is entitled to payment of a pension at the rate of $550 per month." [11] The Court then addressed the question of attorneys' fees pursuant to ERISA Section 502(g), 29 U.S.C. § 1132(g). After considering the relevant factors such as the time required, the novelty of questions involved, and the likelihood of success, the Court awarded $20,000 in attorneys' fees.

---

**8.** Article III, Section 16, International Brotherhood of Teamsters Union Local No. 710 Pension Fund Pension Plan.

**9.** The Trustees state at page 9 of their brief: "Under the Defendant's interpretation of the Plan, an employee who terminates his employment with a contributing employer at age 54, with 20 or more years of Credited Service, would, upon timely application receive a disability pension of $250 per month or a monthly pension of $450 commencing at age 57.

**10.** Page 6, n. 1, Memorandum in Support of Defendant's Motion for Summary Judgment.

**11.** Page 4 of the District Court Order, January 16, 1980. The Order is unpublished.

Plaintiff's counsel had requested $35,000 on a one-third contingency fee theory. The Fund appeals from both the entry of summary judgment and the award of attorneys' fees.

## THE APPLICABILITY OF ERISA

■ This case is a good example of what Congress sought to eliminate in enacting ERISA. ERISA is, of course, a complex statutory scheme which significantly altered the pension field. One aspect of the Act was the establishment of minimum vesting standards which plans were required to meet as a condition of favorable treatment under the Internal Revenue Code. *See* H.R.Rep.No.807, 93rd Cong., 2nd Sess. *reprinted in* [1974] U.S.Code Cong. & Ad.News 4639, 4670, 4685. Congress emphasized the need for minimum vesting provisions to protect employee pension rights, as evidenced by the following statement of the House Ways and Means Committee in reporting the bill:

> Unless an employee's rights to his accrued pension benefits are non-forfeitable, he has no assurance that he will ultimately receive a pension. Thus, pension rights which have slowly been stockpiled over many years may suddenly be lost if the employee leaves or loses his job prior to retirement. Quite apart from the resulting hardship, your committee believes that such losses of pension rights are inequitable, since the pension contributions previously made on behalf of the employee may have been made in lieu of additional compensation or some other benefits which he would have received. *Id.* [1974] U.S.Code Cong. & Ad.News at 4719.

12. 29 U.S.C. § 1053(a). ERISA consistently uses the term "nonforfeitable" rather than "vested". In *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 375–78, 100 S.Ct. 1723, 1733–34, 64 L.Ed.2d 354 (1980) the Court noted that the two terms were used synonymously in the legislative history, and that the term nonforfeitable was intended to describe vested benefits.

13. 29 U.S.C. § 1053(a)(2) actually describes three types of employer contribution plans. Each one has a different "vesting" schedule.

Prior to the enactment of ERISA Federal Courts attempted to avoid inequitable loss of pension rights by imposing a standard of reasonableness on Trustees in determining eligibility for pension benefits. A denial of benefits would be reversed by the Court if the plaintiff demonstrated that the Trustees of the Fund had acted in an "arbitrary and capricious" manner. *See Roark v. Lewis*, 401 F.2d 425 (D.C.Cir.1968); *Lee v. Nesbitt*, 453 F.2d 1309 (9th Cir. 1972). The arbitrary and capricious standard continues to be applied subsequent to the enactment of ERISA. *See Reiherzer v. Shannon*, 581 F.2d 1266 (7th Cir. 1978). Indeed, the minimum vesting provisions of ERISA give added meaning to the arbitrary and capricious standard in that they provide specific rules against which a decision as to eligibility can be measured. *See* e. g. *Riley v. MEBA Pension Trust*, 570 F.2d 406 (2d Cir. 1977).

We believe the Fund's decision as to eligibility in this case is inconsistent with the minimum vesting provisions of Section 203(a) of ERISA, 29 U.S.C. § 1053(a). That section provides that: "an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and . . ."[12] in the case of an employer contribution plan, if an employee "has at least 10 years of service . . ." or 15 years of service, depending on the nature of the plan.[13] The "no vesting" clause, together with the break in service rule, as applied in the instant case, clearly runs afoul of the minimum vesting provisions. A threshold question remains, however, as to the applicability of ERISA to the present case.

ERISA was enacted on September 2, 1974. The vesting provisions found at 29 U.S.C. § 1053 became effective for plans

For example. § 1053(a)(2)(A) permits a plan which is 100 percent vested after 10 years. Under § 1053(a)(2)(B) an employee's right to benefits is not 100% vested until 15 years, but after 5 years his benefits are partially (25%) vested, and the percentage of vested interest increases each year. Section 1053(a)(2)(C) provides for 100% vesting after 10 years, with partial vesting after 5 years based on a sum of age and years of service formula. Fifteen years, however, is the longest period allowed before benefits must be 100% vested.

already in existence as of January 1, 1974 in plan years "beginning after December 31, 1975." [14] Assuming that the Teamsters plan operates on a calendar year, the vesting provisions of ERISA would have become applicable on January 1, 1976. A fiscal year other than a calendar year would result in ERISA's application to the plan sometime during the 1976 calendar year, depending on the date the next fiscal year after December 31, 1975 began.

According to Defendant's interpretation of the plan, the break in service rule operated to terminate Plaintiff's right to benefits on October 21, 1975, prior to the application of ERISA. Plaintiff also ceased working in covered employment well before ERISA was enacted. Several Courts, however, have looked to the date on which benefits were denied by the Fund for the purpose of determining the applicability of ERISA. The Court in *Winer v. Edison Bros. Stores Pension Plan*, 593 F.2d 307, 312 (8th Cir. 1979) noted:

> A forfeiture does not occur immediately by the self-executing operation of a plan provision . . . Rather, a forfeiture occurs when a pension committee declares the forfeiture by denying the employee's pension claim.

Judge Renfrew gave a thoughtful and well reasoned analysis of this issue in *Morgan v. Laborers Pension Trust Fund for Northern California*, 433 F.Supp. 518 (N.D. Cal.1977) and concluded that the cause of action accrues "on the date the pension is denied." [15] He reasoned that to look to the date the employee quits working or the date that prior pension credits were cancelled due to a break in service would place an intolerable burden on employees unversed in the law to constantly guard against loss of pension rights. He also noted that suits brought prior to the actual denial would be challenged on ripeness grounds.[16]

In *Reiherzer v. Shannon*, 581 F.2d 1266 (7th Cir. 1978), this Court concurred with Judge Renfrew's analysis and held "that a cause of action arises under section 502 [of ERISA] at the time the trustees of the plan deny an application for benefits." 581 F.2d at 1272. In *Reiherzer* this Court was concerned with when the claim arose solely for purposes of determining whether jurisdiction under ERISA was present. The merits of the controversy did not turn on the application of the minimum vesting provisions.

The date of the Trustees' denial of benefits as the date of the ERISA violation has not met with universal approval. *See Cowan v. Keystone Employee Profit Sharing Fund*, 586 F.2d 888, 895 (1st Cir. 1978) (wrong, if any, occurred when the plan was amended to affect employee's right to benefits); *Martin v. Bankers Trust Co.*, 565 F.2d 1276 (4th Cir. 1977) (cause of action accrued at time employee was discharged); *Haeberle v. Board of Trustees of Buffalo Carpenters*, 624 F.2d 1132, 1137 (2d Cir. 1980) (cause of action accrued at the time a break in service rule operated to forfeit previously earned pension credits). *Vermeulen v. Central States Southeast and Southwest Areas Pension Fund*, 490 F.Supp. 234, 237 (M.D.N.C.1980) (cause of action accrued at time of break in service). This Court in *Fremont v. McGraw-Edison Co.*, 606 F.2d 752, 758 (7th Cir. 1979), *cert. denied* 445 U.S. 951, 100 S.Ct. 1599, 63 L.Ed.2d 786 (1980), rejected the notion that the claim arises on the date the claim is denied by the Fund. In *Fremont* three former employees brought an action against McGraw-Edison Company under ERISA based on a denial of pension benefits. The three employees had stolen valuable trade secrets from the Company which were not discovered until after their resignation. Pension benefits were denied pursuant to a clause of the plan which provided that no employee who voluntarily terminated employment after engaging in embezzlement, or theft of trade secrets, would have any vested right benefits. The employees challenged the denial of benefits on the theory that they violated the minimum vesting requirements of section 203 of

---

**14.** 29 U.S.C. § 1061(b)(2). See also *Riley v. MEBA Pension*, 510 F.2d 406, 411 (2nd Cir. 1977).

**15.** 433 F.Supp. at 522 n.5.

**16.** *Id.*

ERISA, 29 U.S.C. § 1053. The Court held that ERISA did not apply, and specifically stated:

> ... For § 203 to apply, one must be an employee after its effective date and the forfeiture of one's benefits must occur after its effective date.[17]

We believe *Fremont* controls this case. Since plaintiff was not an employee after October 21, 1972, well before the enactment and effective date of ERISA § 203, we must conclude the Act's minimum vesting provisions are inapplicable.

## WHETHER THE TRUSTEES' DECISION WAS ARBITRARY AND CAPRICIOUS

Since the District Court relied on the recommendation of the United States Magistrate, we turn to the Magistrate's recommendation for the basis of the lower court's arbitrary and capricious finding. The Magistrate found the application of the break in service rule arbitrary and capricious whenever applied to an employee who "had attained the age of fifty-seven and met the service requirement of the Plan."[18] In support of that conclusion, the Magistrate relied on the case of *Lee v. Nesbitt*, 453 F.2d 1309 (9th Cir. 1972). With respect to the "no vesting" rule, the Magistrate concluded that it applied only to those who had not reached the age and length of service requirements.

*Lee v. Nesbitt*, 453 F.2d 1309 (9th Cir. 1972) is one of the pre-ERISA cases which invalidated a decision of a pension fund as to eligibility on the arbitrary and capricious standard.[19] In *Lee* the employee sustained an involuntary break in service which resulted in the forfeiture of his credited service and the loss of pension benefits. The plaintiff did not question the reasonableness of the break in service rule *per se*, but only as applied in that case. 453 F.2d at 1311. The Court agreed and found that the

reasonableness of the application of the break in service rule hinged on the voluntariness of the break in service. Since *Lee*, several courts have focused on the voluntariness of a break in service in determining whether the rule is applied arbitrarily. *Norton v. I. A. M. National Pension Fund*, 553 F.2d 1352, 1359 (D.C.Cir.1972) (break in service due to a permanent disability); *Knauss v. Gorman*, 583 F.2d 82, 88–89 (3d Cir. 1978) (break in service due to bankruptcy of the employer). This Court's decision in *Reiherzer v. Shannon*, 581 F.2d 1266 (7th Cir. 1978) supports drawing a distinction between voluntary and involuntary breaks in service. In that case we held an employee's promotion to supervisor, which was technically a break in service under the terms of the plan, was an arbitrary application of the break in service rule.

We believe the distinction between voluntary and involuntary breaks in service is crucial to determining the arbitrariness of the operation of a given break in service rule. We believe that, ERISA aside, Trustees have a valid interest in limiting the pension rights of the transient employee by means of a break in service rule.[20] Yet, the application of a break in service rule to an employee who faithfully puts in his twenty years and then, through no fault of his own, is forced to leave covered employment is simply arbitrary. To permit the break in service rule to operate in such a fashion would allow an employer to terminate an employee who has the requisite years but not attained retirement age less the break in service period, and effectively eliminate that employee's right to a pension.

The record before is, however, insufficient to affirm the District Court. Since the parties assumed no factual dispute existed, and the District Court recognized none, no facts were established other than

---

17. We believe this language is not inconsistent with *Reiherzer*. In that case the Court construed Section 502 of ERISA for the purpose of determining jurisdiction. In *Fremont* we addressed the issue of when Section 203 protection applies to employees and former employees.

18. Recommendation of United States Magistrate Charles Evans, Case No. 78–3175, November 5, 1979, at p. 3.

19. *See* also *Roark v. Lewis*, 401 F.2d 425 (D.C. Cir.1968).

20. *See* e. g., *Landro v. Glendenning Motorways, Inc.*, 625 F.2d 1344 (8th Cir. 1980).

by stipulation. Yet, there is no stipulation or finding as to the cause of plaintiff's departure from covered employment. While plaintiff indicated in his deposition that he left due to a permanent shoulder disability, there is no finding of fact on that issue. We do not know from the record before us whether Milton Van Fossan voluntarily left covered employment or whether his break in service was caused by a disability. Accordingly, we reverse the entry of summary judgment as it is not supported by adequate findings of fact. We remand the case to the District Court *solely* for purposes of determining the voluntariness of the plaintiff's break in service. If the break in service is voluntary, we, unlike the District Court, find insufficient precedent to support overturning the Trustee's application of the break in service rule. If the break in service was involuntarily brought about, we believe the pre-ERISA case law discussed herein supports a finding of arbitrariness.[21]

■ The "no vesting" provision does not alter our decision in any way. We find the provision ambiguous in that it is unclear as to its application. If, as the District Court found, the provision applied only to those employees who have not attained the required age and tenure, then it is reasonable. If, however, it is meant to be applied to an employee, such as the plaintiff, who meets all of the vesting requirements simultaneously, then it is truly an arbitrary provision. Such an application would have the absurd result of jeopardizing every employee pension including those who meet all the requirements for eligibility. The plaintiff in the instant case met every requirement for eligibility from the time he attained age 57 on August 26, 1974 until he sustained a three-year break in service on October 21, 1975. To say that no pension rights vested during that period is to read the concept of vesting out of the plan altogether. Such an interpretation is arbitrary and capricious.

## THE PENSION BENEFITS

■ The District Court found that plaintiff was entitled to a pension in the amount of $550 per month. That amount reflected the normal retirement benefit for those employees sixty and over. While plaintiff was sixty at the time he applied for benefits, his rights vested when he attained the age of 57. The pension for those retiring at 57 is $450 per month. To permit plaintiff to receive the high benefits simply because he waited until his sixtieth birthday to apply would render the graduated benefit scale of the plan meaningless. It would also ignore the break in service provision altogether. While in some cases it may be arbitrary to deny benefits entirely under the break in service rule, we do not read that rule out of the plan entirely. Indeed, the break in service rule is a legitimate means of preventing employees from leaving covered service at age 55 and then waiting five or more years before applying for benefits in order to receive the same monthly benefit as those who continued working until they are sixty.[22] Plaintiff's right to benefits, if any, vested at the time he reached age 57 and his benefits must be set according to the provisions of the plan relating to retirement at that age.

## ATTORNEYS' FEES

The District Court, in the exercise of its discretion, set attorneys' fees at $20,000. The Court considered all of the relevant factors and we have no quarrel with the methodology employed. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974). Since we cannot affirm the District Court on the record before us, however, plaintiff's success on the merits is now in doubt. Also, as our opinion suggests, we feel plaintiff's counsel could have explored the vesting provisions a bit further and resolved all of the factual issues. The statute, 29 U.S.C. § 1132(g), specifically gives the District Court discretion

---

21. It should be clear that we do not consider a break in service provision arbitrary and capricious *per se*. It is only the application of such a rule to a circumstance beyond the employee's control that we find arbitrary. *See Vermeulen v. Central States Southeast and Southwest*

*Pension Fund*, 490 F.Supp. 234, 238 (M.D.N.C. 1980).

22. As the preceding section of this opinion indicates, the employee who is forced to leave covered employment prior to reaching retirement age presents a different case.

in this area, irrespective of the result on the merits. The matter of attorneys' fees should be considered anew at the conclusion of the case in remand, and we remand for consideration at that time.

For the reasons set forth herein, the judgment of the District Court is Reversed and Remanded for further proceedings.