Thomas F. COSSACK, Plaintiff,

v.

Darrell L. BURNS, Samuel R. Grimaldi, Anthony C. Caropresso, Walter D. Gould, Ironworker's Local No. 12 Pension Fund, and Ironworker's Local No. 12, Defendants.

No. 95–CV–1837.

United States District Court, N.D. New York.

July 9, 1997.

Helm, Shapiro, Anito & McCale, Albany, NY (Mark D. Lansing, of counsel), for Plaintiff.

Lombardi, Reinhard, Walsh & Harrison, Albany, NY (Paul E. Davenport, of counsel), for Defendants.

## MEMORANDUM–DECISION & ORDER

McAVOY, Chief Judge.

### I. BACKGROUND[1]

Plaintiff Thomas Cossack brings suit under the Employee Retirement Income Security Act ("ERISA") against his union, his pension fund, and the fund's trustees to recover retirement pension benefits. Plaintiff also brings suit under New York State law for breach of contract and estoppel. Essentially,

Cossack alleges that after 39 years of service, the Ironworkers Local No. 12 Pension Fund ("Local 12 Plan") improperly granted him only 8.8 years of pension credits.

In 1953, Cossack began work as an ironworker on permit. In 1957, he obtained his union book. In 1959, he automatically became a participant in the Ironworkers District Council of Western New York and Vicinity Welfare Fund and Pension Fund ("District Council Plan"). In 1969, Ironworkers Local No. 12 ("Local 12 Union") proposed its own pension plan for its fraternal brothers.

According to Plaintiff, the Local 12 Union management (through its business agent, Mr. Winnig) assured members that the Local No. 12 Pension Fund had the same benefits as the District Council Plan and that the new pension fund would not curtail the benefits a Union member earned in the District Council Plan. Plaintiff states that it was represented to him that once a union member was vested under the terms of the District Council Plan, that member's pension credits were safe and vested under the Local 12 Plan, even if that member stopped working or missed time over the years. Without these assurances, Cossack argues, there was no point to the membership's approving the Local 12 Plan (i.e., no point of potentially losing all past pension credits). In addition, until his retirement, Plaintiff alleges that he was never provided a copy of the 1969 Local 12 Plan, or its Summary Plan Description ("SPD").

In 1992, Cossack retired and applied for retirement benefits. At that time, Cossack was told by the Local 12 Plan Administrator, Darrell Burns, that under the Local 12 Plan's break–in–service rules, Cossack's failure to work in the mid 1970's had caused him to forfeit all prior pension credit he earned. On December 11, 1992, the Plan Trustees denied Cossack's request for additional benefits after reviewing Cossack's application and ob-

---

1. Unfortunately, the Court's task in laying a factual predicate for the instant motions is made especially difficult because neither party has submitted a proper Local Rule 7.1(f) Statement. Instead of providing a short and concise statement of the material facts as to which "the moving party contends there is no genuine issue, with specific citations to the record," *see* N.D.N.Y.L.R. 7.1(f), the parties have used their Rule 7.1(f) Statements to make legal arguments, factual contentions without citation, and to rehash their memoranda of law.

jections to the revocation. Plaintiff filed the instant suit on December 22, 1995.

Presently before the Court are Defendants' Motion and Plaintiff's Cross–Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II. DISCUSSION

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a court may grant summary judgment if it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). It is the substantive law that will determine what facts are material to the outcome of a case. *See Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

Initially, the moving party has the burden of informing the court of the basis of its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The Court must then resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). However, the non-moving party must do more than simply show "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. Only when the Court concludes that no rational finder of fact can find in favor of the non-moving party should summary judgment be granted. *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1223 (2d Cir.1994).

Furthermore, in an effort to aid the disposition of summary judgment motions, the Local Rules of the Northern District of New York require:

> On a motion for summary judgment pursuant to Fed.R.Civ.P. 56, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue, **with specific citations to the record where such facts are set forth**. The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue, **with specific citations to the record where the factual issues arise**. All material facts set forth in the statement served by the moving party shall be deemed admitted unless controverted by the statement served by the opposing party. The motion for summary judgment shall be denied if the moving party fails to file and serve the statement required by this paragraph.

N.D.N.Y.L.R. 7.1(f) (emphasis added). In the absence of this mandatory short and concise statement, the motion shall either be denied or the facts deemed admitted.

■ Here, neither party has complied with Rule 7.1(f). Throughout their Rule 7.1(f) statements, neither party provides even one factual citation, let alone "specific citations to the record where the factual issues arise." N.D.N.Y.L.R. 7.1(f).

If compliance with Local Rule 7.1(f) can be accomplished with such a minimal statement, any benefits inuring from Rule 7.1(f) would be completely eviscerated. Rule 7.1(f) was drafted to force litigants to focus sharply on the specific factual issues in dispute. By doing this, and providing precise citation to the record where the disputed facts are located, both the parties and the Court can move immediately to the gravamen of the case; absent this forced focus, the parties' briefs can remain, as is often the case, as "two ships passing in the night."

Accordingly, because Defendants have failed to comply with Rule 7.1(f), their Motion for Summary Judgment is denied in its entirety. Similarly, because Plaintiff has failed to comply with Rule 7.1(f), Plaintiff's Cross–Motion for Summary Judgment is denied in its entirety. Nevertheless, as evidenced by the submissions of the parties, there is little agreement as to the applicable law in this case. For this reason, the Court

will address some of the legal standards at issue to provide the parties with guidance at trial.

## A. Applicability of ERISA

■ As an initial matter, the Court must determine whether ERISA governs this case at all. Pursuant to ERISA's "preemption provision," ERISA is not applicable where (1) the plaintiff's asserted claim accrued, or (2) the relevant act or omission that served as the basis for the plaintiff's claim occurred, before January 1, 1975. 29 U.S.C. § 1144(b)(1).[2] Thus, § 1144 effectively preserves the application of state law to any cause of action arising before January 1, 1975, as well as to any claim involving an act or omission occurring before that date. *See Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1189 (2d Cir.1996); *Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1500 (9th Cir.1984). In *Nowak v. Ironworkers Local 6 Pension Fund,* the Second Circuit had cause to interpret section 1144, and stated: "In interpreting the 'act or omission' clause of this provision, we have held that ERISA will not apply where a denial of benefits after January 1, 1975, was merely the 'inexorable consequence' of a pre–1975 'act or omission.' " 81 F.3d at 1189 (*quoting Lamontagne v. Pension Plan of the United Wire, Metal & Mach. Pension Fund,* 869 F.2d 153, 155–56 (2d Cir.1989)).

Here, there are three events that could conceivably be considered the relevant "act or omission" triggering ERISA preemption: the date on which Plaintiff is alleged to have completed his "break in service" such that he forfeited his pension credits; the adoption date of the pension plan that was in effect at the time Plaintiff's break in service occurred; or the adoption date of the pension plan that was in effect at the time Plaintiff applied for benefits.

Defendants argue that Cossack incurred a five year break–in–service from plan years 1973–74 through 1977–78; thus, Defendants assert that as of May 31, 1976, three consecutive plan years had past since Cossack earned any pension credit. In opposition, Plaintiff does not contest that he was unemployed between 1974 and 1977, but instead asserts that his unemployment was involuntary and thus it cannot divest him of earned past pension credits. (*See* Plf's. Mem. of Law at 12). Putting aside Plaintiff's argument as to the significance of his asserted involuntary unemployment, for purposes of ERISA preemption the Court will initially assume that Plaintiff's break–in–service date was May 31, 1976.

The fact that May 31, 1976, is after the January 1, 1975 effective date of ERISA leads to the preliminary conclusion that ERISA governs the instant dispute. However, recent decisions in this circuit caution that the present conundrum is not so easily resolved. In *Nowak,* the Second Circuit stated that the relevant "act or omission" was the adoption of the break–in–service provision in the applicable pension plan, rather than the actual date the break–in–service occurred. 81 F.3d at 1189–90. Similarly, in *Lamontagne v. Pension Plan of the United Wire, Metal & Mach. Pension Fund,* 869 F.2d 153 (2d Cir.1989), the court stated:

[T]he act central to Lamontagne's case was the Plan's pre–1975 adoption of the break in employment policy. This policy required the Fund to deny Lamontagne's pension application in 1978, since Lamontagne had failed to obtain covered employment at any time after September 1971. Given Lamontagne's employment history, the 1978 denial of his pension application was merely a consequence of the Fund's adoption of the break in employment policy. The relevant act for § 1144(b)(1) pur-

**2.** 29 U.S.C. § 1144 provides, in relevant part:
    (a) Supersedure; effective date
   Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.
    (b) Construction and application
   (1) This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975.

poses—the Fund's adoption of the break in employment policy—occurred before 1975. 869 F.2d at 156.

Therefore, based on *Nowak* and *Lamontagne*, the relevant act or omission giving rise to Plaintiff's claim would be the adoption date of the pension plan that was in effect at the time Plaintiff's break in service occurred, rather than the actual date Cossack is alleged to have forfeited his past earned pension credits. After an exhaustive search of the record here, the Court pieced together the following chronology: The Ironworker's Local No. 12 Pension Fund was created in 1969. In 1972, the Board of Trustees adopted amendments to the Local 12 Plan ("1973 Amended Plan"), with an apparent effective date of June 1, 1973. (*See* Burns Aff. Ex. C). Effective June 1, 1976, the Board of Trustees "amended and restated" the 1973 Amended Plan ("1976 Amended Plan"). Finally, the Local 12 Plan was again amended in 1990 ("1990 Amended Plan").

Based on this chronology, Plaintiff's May 31, 1976 break–in–service occurred one day before the effective date of the 1976 Amended Plan, and was thus governed by the 1973 Amended Plan. Because the 1973 Amended Plan was adopted prior to January 1, 1975, under the reasoning of *Lamontagne* and *Nowak*, ERISA would not be applicable.

However, the present case may be factually distinguishable from *Lamontagne* and *Nowak*, such that their reasoning is inapposite here. For example, there is no indication in *Lamontagne* that the pension plan at issue had been amended after the effective date of ERISA; thus, only a pre–ERISA plan was implicated. Similarly, in *Nowak*, although the plan at issue had been amended in 1985, 1988, and 1993, Nowak left his union while the 1973 version of his pension plan was in effect, and the 1973 plan was the only plan at issue in the case.[3] Thus, in both *Lamontagne* and *Nowak* the issue of post–ERISA plan amendments was not raised.

This distinction is relevant to the present discussion for two reasons. First, in this case it appears that post–ERISA plan amendments in 1976 and 1990 provide greater protection to Cossack vis-a-vis his past earned pension credits. For example, Plaintiff avers that the 1976 Amended Plan Summary Plan Description ("1976 SPD") stated:

> You will be entitled to Past Service Benefit Credit for the period prior to June 1, 1969 on the basis of these credits which were earned and/or granted to you in accordance with the Rules and Regulations of the Iron Workers District Council of Western New York and Vicinity Pension Plan.

(Plf's Mem. of Law at 16 (correct citation not provided)). Therefore, Plaintiff argues that the plan trustees were required to apply the more liberal break–in–service provisions contained in the later plan amendments.

In addition, Plaintiff argues that the 1976 SPD reaffirmed the statements made at meetings in 1969, at which the Local 12 Plan was originally presented, that all credits earned under the District Council Plan were transferred to the Local 12 Plan. Indeed, this factual contention is central to Plaintiff's argument, discussed *infra*, that he was either fully vested in the Local 12 Plan before any break–in–service occurred, or that Defendants are estopped from denying him benefits based on their alleged misrepresentations in 1969. Thus, unlike *Nowak* and *Lamontagne*, post–ERISA plan amendments dealing with vesting appear to be relevant to the instant dispute.

The second reason that post–ERISA plan amendments may distinguish the present situation from *Nowak* and *Lamontagne* concerns Plaintiff's assertion that if a break–in–service did occur, it occurred after the effective date of the 1976 Amended Plan, a plan governed by ERISA. Specifically, Plaintiff asserts that the original 1969 Local 12 Plan calculated a break–in–service based on a cal-

---

**3.** The conclusion that the 1973 plan was the only relevant plan is further supported by the *Nowak* court's approval of the district court's decision to ignore a 1993 plan amendment. 81 F.3d at 1186. The *Nowak* court stated:

> Reviewing Nowak's claims under state contract law principles, the [lower] court held that the administrative exhaustion requirement of the 1993 Plan was not relevant to Nowak's action and that no such requirement existed under the applicable 1973 Plan.

*Nowak*, 81 F.3d at 1186.

endar year (*i.e.*, Plan Year of January 1 to December 31). Although the 1973 Amended Plan changed the relevant time period for calculating a break–in–service to a fiscal year (*i.e.*, Plan Year of June 1 to May 31), Cossack asserts that he was never provided notice of this change. Thus, any change in the Plan Year did not bind him until the 1976 Amended Plan became effective on June 1, 1976. Accordingly, if a break–in–service did occur, it occurred no earlier than December 31, 1976. Thus, any break–in–service occurred after the effective date of the 1976 Amended Plan—a post–ERISA plan—and the present dispute is governed by ERISA.

Based on the foregoing, the Court concludes that post–ERISA plan amendments are sufficiently relevant to the present dispute to bring this case within the ambit of ERISA. Of course, if it is determined at trial that the facts do not implicate post–ERISA plan amendments, Plaintiff's ERISA claim will fail and Plaintiff will be forced to proceed on his remaining state law claims.

## B. The Standard of Review under ERISA

■ Courts should review a denial of benefits challenged under ERISA *de novo* unless the plan itself grants the fiduciary discretion to construe the terms of the plan, in which event the court should apply the arbitrary and capricious standard. *See O'Neil v. Retirement Plan for Salaried Employees of RKO General, Inc.*, 37 F.3d 55, 59 (2d Cir.1994); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989). However, to the extent that a fiduciary operates under a conflict of interest, that conflict should be weighed in determining whether an abuse of discretion occurred. *O'Neil*, 37 F.3d at 59. Nevertheless, where "plan language categorically states that certain benefits will be provided, de novo review is appropriate because unambiguous language leaves no room for the exercise of discretion." *O'Neil*, 37 F.3d at 59; *see also Heidgerd v. Olin Corp.*, 906 F.2d 903, 908–09 (2d Cir.1990).

Here, the Local Plan 12 clearly grants the Board of Trustees discretion to construe the terms of the plan. Article II, section 2.02 of

1990 Local Plan 12 states, *inter alia*, that "[t]he Board of Trustees is responsible for interpreting the Plan and for making determinations under the Plan." (Burns Aff., Exh. A).

However, under the second part of the standard articulated in *O'Neil v. Retirement Plan for Salaried Employees of RKO General, Inc.*, *de novo* review may nevertheless be appropriate where unambiguous plan language leaves no room for the exercise of discretion. 37 F.3d 55, 59. In other words, if the relevant plan provision is susceptible to unambiguous interpretation, there is simply no reason to rely on the trustee's interpretation. For example, in *Heidgerd v. Olin Corp.*, 906 F.2d 903 (2d Cir.1990), the Second Circuit stated: "We conclude that the language used in the Booklet leaves no room for any supposition that, in the circumstances of this case, the plan administrator had discretion as to whether or not severance benefits would be awarded. Thus, . . . Olin's denial of severance benefits to plaintiffs was to be reviewed *de novo*." 906 F.2d at 909; *see also Katz v. Colonial Life Ins. Co. of America*, 951 F.Supp. 36, 39 (S.D.N.Y.1997) (finding plan language unambiguous).

■ Plaintiff argues that the break in service provisions of Local Plan 12 are clear and unambiguous, thus divesting the Board of Trustees of their discretion to interpret the relevant break in service provisions. Article III, section 5(b) of the 1973 Local 12 Plan states, in relevant part: "It shall be considered a break in employment that an Employee's previously accumulated Pension Credit shall be canceled if, after the Contribution Date, he fails to earn any Pension Credit in a period of three consecutive Plan Years." (Burns Aff., Exh. C).

After examining this provision, and the other provisions relating to break in service, including the listed exceptions, the Court concludes that the Local 12 Plan's Break in Service provisions are clear and unambiguous. Moreover, Defendants themselves state this very conclusion in their memorandum in support of their motion: "The Trustees came to this determination by applying the unambiguous break in service rules." (Def.s'

Mem. of Law at 3; *see also* Def.s' Mem. of Law at 9). Consequently, Defendants' denial of benefits is subject to *de novo* review.

## C. Did Plaintiff Incur a Break–in–Service?

■ Defendants argue in their motion for summary judgment that Cossack incurred a five year break–in–service for the Plan years 1973–74 through 1977–78. Therefore, Defendants assert that as of May 31, 1976—the end of the 1975–76 Plan Year [4]—plaintiff forfeited his pension credits because he incurred a permanent break–in–service under the plan rules in effect at the time. In opposition, Plaintiff does not appear to contest that he was unemployed between 1974 and 1977. Instead, Cossack asserts that his unemployment was involuntary and thus it cannot divest him of earned past pension credits. (*See* Plf.'s Mem. of Law at 12). Specifically, Cossack argues that the Local 12 Plan should not count an involuntary absence from work—a break caused, for example, by an inability to find work due to high unemployment—as a "break–in–service" under the plan rules.

Several circuits have held that a pension plan's refusal to treat involuntary absences this way is arbitrary and capricious. *See, e.g., Norton v. I.A.M. Nat'l Pension Fund,* 553 F.2d 1352, 1359 (D.C.Cir.1977) (break–in–service due to a permanent disability); *Knauss v. Gorman,* 583 F.2d 82, 88–89 (3d Cir.1978) (break–in–service due to bankruptcy of the employer); *Reiherzer v. Shannon,* 581 F.2d 1266 (7th Cir.1978) (employee's promotion to supervisor, which was technically a break–in–service under the terms of the plan, was an arbitrary application of the break–in–service rule).

In *Lee v. Nesbitt,* 453 F.2d 1309 (9th Cir. 1972), a pre–ERISA case, the plaintiff did not question the reasonableness of the break–in–service rule *per se,* but only as applied in his case. 453 F.2d at 1311. The Ninth Circuit agreed and held the break–in–service rule "invalid to the extent that it requires forfeiture of employment credits in the case of an employee who has accumulated the minimum number of credits to entitle him to a pension and then, due to unavailability of covered employment, suffers a break in employment during the interval remaining before his retirement." *Lee,* 453 F.2d at 1312.

Similarly, in *Van Fossan v. Int'l Bd. of Teamsters Union Local No. 710 Pension Fund,* 649 F.2d 1243, 1248–49 (7th Cir.1981), the Seventh Circuit held that it is arbitrary to apply a benefit forfeiture rule to an employee who is involuntarily not at work due to a layoff or disability. The *Van Fossan* court stated that "the application of a break in service rule to an employee who faithfully puts in his twenty years and then, through no fault of his own, is forced to leave covered employment is simply arbitrary." 649 F.2d at 1248.

These decisions are not surprising in light of the remedial nature of ERISA. As this circuit has stated:

> [T]here can be no doubt that ERISA was enacted for the purpose of assuring employees that they would not be deprived of their reasonably–anticipated pension benefits; an employer was to be prevented from "pulling the rug out from under" promised retirement benefits upon which his employees had relied during their long years of service.

*Amato v. Western Union Int'l, Inc.,* 773 F.2d 1402, 1409 (2d Cir.1985) (*quoting* S.Rep. No. 127, 93d Cong., 1st Sess., *reprinted in,* 1974 U.S.Code Cong. & Ad. News 4639, 4838).

Although the Second Circuit has not addressed the specific issue presented here, in *Saladino v. I.L.G.W.U. Nat'l Retirement Fund,* 754 F.2d 473 (2d Cir.1985), the court denied a plaintiff's request for attorney fees, stating in a footnote:

> Saladino argues that he has a colorable legal claim to eligibility despite his having left the industry before he reached the age of 65 because he departed involuntarily when his employer went out of business. He cites *Lee v. Nesbitt,* 453 F.2d 1309 (9th

---

4. As already noted, there is disagreement as to whether the Local 12 Plan was properly operating on a fiscal year or a calendar year at the time

Plaintiff is alleged to have incurred his break–in–service. *See* discussion *infra.*

Cir.1972); *Knauss v. Gorman*, 583 F.2d 82 (3d Cir.1978); and *Van Fossan v. Int'l Brotherhood of Teamsters Local No. 710 Pension Fund*, 649 F.2d 1243 (7th Cir. 1981), for the proposition that it is arbitrary and capricious to deny benefits for failure to meet vesting requirements where the sole reason for this is an involuntary layoff.

754 F.2d at 477 n. 4. The *Saladino* court went on to distinguish these cases by noting that

> [t]hese cases, however, involved break-in-service provisions that operated to divest an employee of benefits he had already fully qualified for otherwise. Saladino, on the other hand, failed to satisfy a condition precedent to qualifying for such benefits. More importantly, in each of the cases cited by Saladino, the uncovered period was less than five years and the applicant had to demonstrate why he was unable to obtain covered employment during this period. Saladino has come forth with no evidence to explain why he failed to obtain covered employment for thirteen years after he lost his job.

754 F.2d at 477 n. 4.

In light of the equitable purposes of ERISA, and in light of the Second Circuit's implicit approval of *Lee* and *Van Fossan*, this Court finds the reasoning in *Lee* and *Van Fossan* to be persuasive. Although the Local 12 Plan Trustees have a valid interest in limiting the pension rights of a transient worker by means of a break-in-service rule, the application of a break-in-service rule to an employee who otherwise qualifies for vested benefits, but who involuntarily fails to engage in continuous covered employment, is arbitrary, and thus contrary to law.[5]

The question remains, however, whether (1) Cossack was otherwise qualified for vested pension benefits, and (2) whether the reasons for Plaintiff's failure to work were of the type that equity requires should not be held against him in calculating his pension. Plaintiff essentially makes two arguments in support of his position that his alleged break-in-service should not divest him of past earned pension credits. First, he asserts that localized economic conditions and high unemployment resulted in his inability to find covered employment. In opposition, Defendants argue that work was available, but that Cossack simply failed to respond to the union's repeated attempts to send him work.

Second, Plaintiff asserts that: most work assignments were made by and through the Local 12 Union and that the Local 12 Union's Business Agent, Thomas Mullen, intentionally failed to dispatch Cossack to work assignments. Although the parties' allegations and factual support on this issue are thin, the Court finds that a genuine issue of material fact exists as to whether Plaintiff's unemployment was "involuntary."

### D. Was Plaintiff Provided Notice of the 1972 Plan Amendments?

■ The sufficiency of the notice provided to the Local 12 Plan's participants is relevant because of Plaintiff's assertion that if a break-in-service did occur, it occurred after the effective date of the 1976 Amended Plan, a plan governed by ERISA.[6] Specifically, Plaintiff asserts that the original 1969 Local 12 Plan calculated a break-in-service based on a calendar year. Although the 1973 Amended Plan changed the relevant time period for calculating a break-in-service to a fiscal year, Cossack asserts that he was never provided notice of this change. Thus, if a break-in-service did occur, it occurred no earlier than December 31, 1976—after the effective date of ERISA.

Under both ERISA, *see* 29 U.S.C. § 1022(b), and pre-ERISA case law, *see Agro v. Joint Plumbing Industry Bd.*, 623 F.2d 207, 211 (2d Cir.1980), Plan trustees must furnish to participants clear, timely ex-

---

5. Although the facts here warrant a *de novo* review, it is clear that even under the more strenuous "arbitrary and capricious standard" of review the denial of benefits is subject to challenge.

6. The Ironworker's Local No. 12 Pension Fund was created in 1969. In 1972, the Board of Trustees adopted amendments to the Local 12 Plan. Effective June 1, 1976, the Board of Trustees "amended and restated" the 1973 Amended Plan. Finally, the Local 12 Plan was again amended in 1990.

planations of plan amendments. Here, Cossack avers that he was never provided notice of the 1972 Plan amendments. In opposition, Defendants state that notice of the 1972 amendments was given to participants when they redeemed their vacation stamps. Thus, this issue is properly left to be resolved based on the evidence presented at trial.

### E. Are Defendants Barred from Relying on the Break in Service Provisions of the Local 12 Plan?

■ Finally, Plaintiff argues that Defendants are estopped from relying on the break–in–service provisions of the Local 12 Plan. Plaintiff's complaint does not differentiate between a claim for promissory estoppel and one for equitable estoppel; he simply asserts one generic "estoppel" claim. In his memorandum of law, however, Plaintiff states that he is asserting two separate estoppel theories: equitable and promissory.

■ Although courts and litigants often confuse the two doctrines, equitable and promissory estoppel are two separate, albeit closely related theories of recovery. *See generally Aquilio v. Police Benevolent Ass'n of N.Y. State Troopers,* 857 F.Supp. 190 (N.D.N.Y.1994) (discussing estoppel theories). In *Ludwig v. NYNEX Service Co.,* 838 F.Supp. 769 (S.D.N.Y.1993), the court distinguished between equitable and promissory estoppel on the basis that the former, unlike the latter, does not require the existence of a promise. 838 F.Supp. at 793 n. 45; *see also Triology Variety Stores, Ltd. v. City Products Corp.,* 523 F.Supp. 691, 697 n. 3 (S.D.N.Y.1981) (distinguishing between equitable and promissory estoppel on the basis that "[e]quitable estoppel depends on a misrepresentation of an existing fact, while promissory estoppel requires a promise concerning future intent[ ]").

■ Not surprisingly, there is a difference between the elements necessary to establish a claim for equitable estoppel and those necessary to establish a claim for promissory estoppel. The elements of an equitable estoppel claim under ERISA,[7] as interpreted by the Second Circuit are: "(1) material representation, (2) reliance and (3) damage." *Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir.1993) (citation omitted).

■ A claim for promissory estoppel, on the other hand, requires a showing of " 'a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of his reliance.' " *Arcadian Phosphates, Inc. v. Arcadian Corp.,* 884 F.2d 69, 73 (2d Cir.1989) (*quoting Esquire Radio & Electronics, Inc. v. Montgomery Ward & Co.,* 804 F.2d 787, 793 (2d Cir.1986)) (*quoting* Restatement (Second) of Contracts § 90 (1981)) (citation omitted). Furthermore, to sustain a claim for promissory estoppel under New York law, a plaintiff must also show that he "suffered unconscionable injury." *Schwartz v. Newsweek, Inc.,* 653 F.Supp. 384, 389 n. 1 (S.D.N.Y.1986), *aff'd,* 827 F.2d 879 (2d Cir.1987).

Here, Plaintiff provides the following factual assertions in support of his estoppel claims. First, Plaintiff alleges that Defendants represented that the Local 12 Plan maintained the same benefits as the District Council Plan it was replacing. Specifically, Cossack alleges that the Local 12 Union's Business Agent and Local 12 Plan's spokesperson represented to him that his pension credits would be transferred to the new plan and that the vesting requirements were not being changed. Furthermore, Cossack states that no summary plan description setting forth contrary terms was provided to the union members or to him.

Second, Cossack states that he reasonably relied on these representations by believing that be was vested, and thus not subject to the break rules. Finally, Plaintiff states that he suffered damages when the Defendants denied him benefits based on his subsequent break–in–service.

Accordingly, the Court finds that Plaintiff has stated a claim for equitable estoppel, but

---

7. This is also the standard under New York law. *See, e.g., Walsh v. Prudential Ins. Co. of Amer.,* 101 A.D.2d 988, 477 N.Y.S.2d 473 (3rd Dep't 1984), *aff'd,* 64 N.Y.2d 1053, 489 N.Y.S.2d 902, 479 N.E.2d 247 (1985).

**118**

has not stated a claim for promissory estoppel. Plaintiff is alleging that Defendants misrepresented the provisions of the Local 12 Plan. Because Plaintiff's claim is predicated on the misrepresentation of an existent fact, equitable estoppel applies. *See Triology Variety Stores,* 523 F.Supp. at 697 n. 3. It remains to be seen, however, whether Plaintiff can make out his estoppel claim at trial.

### III. CONCLUSION

In summary, pursuant to Local Rule 7.1(f) Defendants' Motion for Summary Judgment is DENIED in its entirety, and Plaintiff's Cross–Motion is DENIED in its entirety.

Furthermore, the Court concludes that post–ERISA plan amendments are sufficiently relevant to the present dispute to bring this case within the ambit of ERISA. However, if it is determined at trial that the facts do not implicate post–ERISA plan amendments, Plaintiff's ERISA claim must fail. In addition, pursuant to ERISA, Defendants' denial of benefits is subject to *de novo* review.

On the issue of whether Plaintiff incurred a break–in–service, the Court concludes that genuine issues of material fact exist as to whether (1) Cossack was otherwise qualified for vested pension benefits, and (2) whether the reasons for Plaintiff's failure to work were of the type that equity requires should not be held against him in calculating his pension.

Furthermore, the Court concludes that a genuine issue of material fact exists as to whether Plaintiff was provided notice of the 1972 Plan amendments, and whether Defendants are equitably estopped from applying the Local 12 Plan's break–in–service rules.

**IT IS SO ORDERED.**